**In re the Marriage of Bonnie Y. MOYLAN, Respondent,**

v.

**Gerald G. MOYLAN, petitioner, Appellant.**

**No. C2–84–2177.**

Supreme Court of Minnesota.

April 11, 1986.

J. Christopher Cross, Minneapolis, for appellant.

Richard D. Goff, St. Paul, for respondent.

AMDAHL, Chief Justice.

The main issue in this case is whether the child support guidelines contained in Minn.Stat. § 518.551, subd. 5 (1984), should be employed by the courts in child support modification proceedings under Minn.Stat. § 518.64 (1984). Before we can decide this issue, however, we must determine whether the child support guidelines apply in all child support cases or just those involving public assistance programs, an issue this court has yet to address. We hold that the guidelines do apply in all child support cases and in all modification proceedings and that all child support awards must be supported by detailed findings of fact.

Gerald and Bonnie Moylan's marriage was dissolved in 1975. Pursuant to the parties' stipulation, the judgment and decree of dissolution awarded Bonnie custody of the three Moylan children, ages 15, 13, and 5. Gerald was to pay child support in the amount of $75 per month per child until each was to become emancipated. Gerald was also required to maintain, among other things, health insurance for each child and a life insurance policy on himself adequate to cover all child support obligations to become due.

Bonnie and Gerald were made tenants in common of the family home and Bonnie was awarded rent-free possession of the home until she died, remarried, or when the youngest Moylan child became emancipated. When one of these conditions occurs, the house is to be sold and the proceeds evenly divided. Bonnie is responsible for all minor repairs; the cost of major home repairs is to be split between the two. At the time of the divorce, Gerald's gross income was approximately $24,000 and Bonnie's was $8,800.

On January 5, 1984, Bonnie filed a motion for: (1) modification of child support to 25% of Gerald's net income or $500 per month, whichever is greater; (2) cost-of-living adjustments in the child support order; (3) control of monies held in trust for their youngest child; and (4) attorney fees. She claimed her monthly budgeted expenses totaled $1,348.63, and that her income amounted to only $950 per month. Gerald opposed the motion. On April 19, 1984, the trial court granted Bonnie's motion concerning cost-of-living increases but denied her other three motions. Specifically, it found that although Gerald's income had more than doubled since entry of the judgment and decree of dissolution, there was insufficient evidence of any increased expenses incurred by Bonnie as well as to the amount of her income. The court did give her permission to reintroduce her motion at a later time. It further held her motion for control of the amounts held in trust for the youngest child to be without merit and it denied her claim for attorney fees.

On August 13, 1984, Bonnie filed another motion to modify child support and she submitted a new affidavit with a new budget. The monthly expenses Bonnie claimed totaled $2,117 in contrast to the $1,348.63 claim of the January motion. The trial court found that in 1983 Gerald had a net income of $45,290.15 and concluded that this amount constituted a substantial increase in income as contemplated by the triggering provision of Minn.Stat. § 518.64,

subd. 2. The court made no express findings regarding Bonnie's expenses or the needs of the dependent child. It nevertheless ordered that the child support payments be increased to $943.56 per month, the amount provided for in the child support guidelines in Minn.Stat. § 518.551, subd. 5. The court further denied Gerald's request to credit the child support payments with the cost of the health insurance he provides for the child and with the $300 to $375 he claims is a fair rental value for his one-half interest in the homestead.

The Court of Appeals affirmed, holding: (1) the application of the guidelines to the child support modification order was proper; (2) although express findings regarding the needs of the child would have been helpful, they were unnecessary in this case because those needs were adequately shown in the record; (3) there was no abuse of discretion in refusing to credit Gerald's child support payments with the fair rental value of the home and the cost of health insurance for the child; and (4) the denial of attorney fees was proper. *Moylan v. Moylan,* 368 N.W.2d 353 (Minn. App.1985). We granted Gerald Moylan's petition for further review and now affirm in part and reverse in part the decision of the Court of Appeals.

1. In considering the questions presented in this appeal, we note that the 1986 Minnesota Legislature recently enacted major revisions in the marriage dissolution laws, chapter 518 of the Minnesota Statutes, including changes in provisions concerning child support. *See* Act of March 24, 1986, ch. ——, 1986 Minn.Laws ——. The interpretation of the amended statutes is not before this court and thus we consider in this case only the 1984 version of the statutory provisions.[1] Our holding in this case will be binding *at least* until the effective date of the statutory amendment.[2]

---

1. Unless otherwise noted, all statutory references are to the 1984 version of the statute.

2. For most of the amendments to the Minnesota Statutes, no effective date was specified in the act. Therefore, the effective date will be August 1, 1986. *See* Minn.Stat. § 645.02 (1984).

Before addressing the specific issues raised by petitioner, we must discuss an issue we have not heretofore encountered: that is, whether the child support guidelines apply in all cases, not just those involving public assistance programs such as Aid to Families with Dependent Children. The child support guidelines were enacted in 1983 as an amendment to Minn. Stat. § 518.551 (1982). Act of June 9, 1983, ch. 308, § 7, 1983 Minn.Laws 1748, 1757–59. As amended, the statute reads in part:

**518.551 MAINTENANCE AND SUPPORT PAYMENTS MADE TO WELFARE AGENCIES.**

Subdivision 1. **Payment to public agency.**

The court shall direct that all payments ordered for maintenance and support be made to the public agency responsible for child support enforcement so long as the obligee is receiving or has applied for public assistance. Amounts received by the public agency responsible for child support enforcement greater than the amount granted to the obligee shall be remitted to the obligee.

\* \* \* \* \* \*

Subd. 5. **Notice to public authority; guidelines.** The petitioner shall notify the public authority of all proceedings for dissolution, legal separation, determination of parentage or for the custody of a child, if either party is receiving aid to families with dependent children or applies for it subsequent to the commencement of the proceeding. After receipt of the notice, the court shall set child support by multiplying the obligor's net income by the percentage indicated by the following guidelines:

\* \* \* \* [guidelines table omitted]

(a) The child support payment guidelines take into consideration the following criteria:

(1) all earnings, income, and resources of the obligor including real and personal property;

(2) the basic living needs of the obligor;

(3) the financial needs of the child or children to be supported; and

(4) the amount of the aid to families with dependent children grant for the child or children.

Minn.Stat. § 518.551 (1984).

The title[3] to the 1983 act, the legislative history,[4] and the wording of the statute inarguably lead to the conclusion that the support guidelines were originally drafted only to provide for support settings in

---

**3.** The title, as enacted, reads: "An act relating to welfare; changing laws relating to child support enforcement; providing for determination and modification of support; \* \* \*." The title of an act may be considered in ascertaining legislative intent. *State v. Northwestern States Portland Cement Co.,* 258 Minn. 162, 166, 103 N.W.2d 225, 227 (1960).

**4.** The development of the bill, S.F. 545, which was eventually enacted as chapter 308 of the 1983 session laws, is illuminating. S.F. 545 was sponsored by Senator Berglin and as originally introduced contained no amendment to section 518.17. After the first reading on the floor, it was sent to the Civil Law Subcommittee of the Senate Judiciary Committee. At the first subcommittee hearing on March 30, 1983, Senator Berglin said that section 17 of the bill provides "Guidelines established to set amounts of child support in welfare cases." She explained the purpose of the bill was to streamline the process of obtaining child support in welfare cases in order to save money for the state and to provide some measure of uniformity in these types of cases.

A representative of the Minnesota Trial Lawyers Association was concerned that the courts would be reluctant to deviate upward and order more support than allowed by the guidelines. In response to that observation, at the next subcommittee hearing on April 6, 1983, Senator Berglin proposed an amendment to Minn.Stat. § 518.17 which would require a court to make express findings only for downward deviations. She explained that the amendment "would make the guidelines more of a floor than a ceiling." On the floor debate of the Senate on April 26, 1983, the Senator again explained that "the guidelines will apply only to AFDC cases." She said that the same guidelines had been used by the Department of Public Welfare for 2 years, but not all counties were abiding by them since compliance was voluntary. She argued that the guidelines should be made compulsory for all counties in order to increase uniformity and to reduce the cost to the state. The bill passed 49–0 in the Senate and 122–1 in the House.

cases involving public assistance to children. Thus, Minn.Stat. § 518.551, subd. 5, standing alone, is not applicable to the setting of child support in nonpublic assistance cases.

However, as the court of appeals recognized in *Halper v. Halper,* 348 N.W.2d 360 (Minn.App.1984), *Kreidler v. Kreidler,* 348 N.W.2d 780 (Minn.App.1984), and in subsequent cases, *see, e.g., Lee v. Ystebo,* 353 N.W.2d 264, 265 (Minn.App.1984); *Bakke v. Bakke,* 351 N.W.2d 387, 388 (Minn.App. 1984), the addition of subdivision 5 to Minn. Stat. § 518.17 by chapter 308, § 17 of the 1983 Laws of Minnesota and the amendment to that subdivision brought by chapter 547, § 16 of the 1984 Laws of Minnesota, incorporates the child support guidelines into all support cases, not those just involving public assistance children.

Minn.Stat. § 518.17 relates to child custody and support. Subdivision 5 provides:

Subd. 5. **Deviation from guidelines.** The court may order the noncustodial parent to pay support in an amount below the appropriate amount determined from the guidelines in section 518.551, subdivision 5 for use in public assistance cases, only after considering the factors in subdivision 4 of this section and making express findings of fact as to the reason for the lower order. An order for support in an amount below the guidelines must include findings of fact regarding the financial resources and needs of the child.

Minn.Stat. § 518.17, subd. 5.

■ Subdivision 5 of Minn.Stat. § 518.-551 specifies the percentage of the child support obligor's net income due as child support depending upon the number of children to be supported and modified by certain listed factors. The child support guidelines, however, specifically address families dependent on public assistance and take into account their special needs. *See* Minn.Stat. § 518.551, subd. 5(a). To blindly apply the guidelines in nonpublic assistance cases would be improper because different factors are necessarily involved. Thus, it is evident that the legislature intended that in nonpublic assistance child support cases

courts should utilize the determined amounts set forth in the guidelines as starting points for the determination of child support awards.

■ Section 518.17, subd. 5, requires that where the court setting the amount of child support deviates from the guidelines and orders that child support be set at an amount below the guidelines amount, it must make express findings on the reasons for the lower court order after having considered the factors in Minn.Stat. § 518.17, subd. 4. The problem with this statutory scheme is it implies that a court need not make findings of fact unless it orders child support in an amount below the figure recommended in the guidelines. This is not the law. The Minnesota Rules of Civil Procedure require, "In all actions tried upon the facts without a jury * * *, the court shall find the facts specially * . * *." Minn.R.Civ.P. 52.01. This rule applies in all family court cases. Fam.Court R., preamble. Findings are necessary to support a judgment and to aid the appellate court by providing a clear understanding of the basis and grounds for the decision. *Midway Mobile Home Mart, Inc. v. City of Fridley,* 271 Minn. 189, 193, 135 N.W.2d 199, 202 (1965). If a trial court gives no findings as to the basis for a child support award, the court's judgment will be without foundation. We therefore require that in all child support cases not involving public assistance, the trial court must make specific findings of fact as to the factors it considered in formulating the award. This rule applies regardless of whether the award deviates from the child support guidelines in Minn.Stat. § 518.551, subd. 5. In cases which do involve public assistance payments, any deviation from the child support guidelines should be accompanied by express findings supporting the deviation.

■ The findings should take into account "all relevant factors including":

(a) The financial resources and needs of the child;

(b) The financial resources and needs of the custodial parent;

(c) The standard of living the child would have enjoyed had the marriage not been dissolved;

(d) The physical and emotional condition of the child, and his educational needs; and

(e) The financial resources and needs of the noncustodial parent.

Minn.Stat. § 518.17, subd. 4. In so doing, the court must recognize that the amounts set up in the child support guidelines take into account the following factors:

(1) all earnings, income, and resources of the obligor including real and personal property;

(2) the basic living needs of the obligor;

(3) the financial needs of the child or children to be supported; and

(4) the amount of the aid to families with dependent children grant for the child or children.

Minn.Stat. § 518.551, subd. 5. The court will thus have to balance all of these factors in the findings before determining the appropriate amount of child support in each case.

Turning now to the main issues in this case, we hold that child support guidelines must also be considered by the courts in all child support modification proceedings. We have determined that Minn.Stat. § 518.-17, subd. 5, makes the amount computed by use of Minn.Stat. § 518.551, subd. 5, a factor in establishing an original child support order. Minn.Stat. § 518.64 provides the parameters for modification of maintenance and support orders and decrees. Subdivision 1 of that statute provides that in modifying the court "may make an order * * * which it might have made in the original proceeding."

Since a court in a modification proceeding can make an order which it could make in the original proceedings and since the original support orders take into consideration the amount of support determined by the application of subdivision 5 of section 518.551, it follows that in modification proceedings the court must consider subdivision 5.

It is well established that the decision to modify a child support order lies in the broad and sound discretion of the trial court, and an appellate court will reverse for an abuse of that discretion only where it finds a "clearly erroneous conclusion that is against logic and the facts on record." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984); *see also Wiese v. Wiese*, 295 N.W.2d 371, 372 (Minn.1980). This discretion, however, must be exercised within the limits set out by the legislature. Subdivision 2 of Minn.Stat. § 518.64 reads:

**Modification.** The terms of a decree respecting maintenance or support may be modified upon a showing of one or more of the following: (1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party; (3) receipt of assistance under sections 256.72 to 256.-87; or (4) a change in the cost-of-living for either party as measured by the federal bureau of statistics, any of which makes the terms unreasonable and unfair. On a motion for modification of support, the court shall take into consideration the needs of the children and the financial circumstances of each party's spouse, if any. * * *

The statute requires a two-step analysis: (1) Do any of the four factors in Minn.Stat. § 518.64, subd. 2, alone or in combination, create a substantial change in circumstances warranting a modification of child support?; and (2) if so, after considering the needs of the children and the financial situation of the parties' spouses, what modification should the court make?

2. The record in this case is unclear as to the findings and reasoning of the trial court. Its modification order states only that Gerald experienced a substantial increase in income, one of the factors required under Minn.Stat. § 518.64, subd. 2. However, there is no mention in that order that this increase in income renders the original child support order unreasonable and unfair, as required under the modification statute. Furthermore, there is no indication in the record that the court considered the needs of the Moylan child. This, too, is required under the statute.

The Court of Appeals affirmed the trial court, observing:

> While our review would have been facilitated by the presence of complete findings regarding the needs of the minor child, we do not deem remand to be necessary. The record before the trial court contained affidavits of both parties. The parties' opinions regarding the needs of the child were adequately set forth in those affidavits. Although findings are of great assistance on review, this court recognized in *Giencke v. Haglund,* 364 N.W.2d 433 (Minn.Ct.App.1985) that they are "not absolutely necessary where a court modifies a judgment of dissolution under Minn.Stat. § 518.64, subd. 2." *Id.* at 435. What is absolutely necessary is that the record be complete enough to facilitate proper review of the trial court's determination. It is here.

*Moylan v. Moylan,* 368 N.W.2d at 356. We disagree. While the record may support a trial court's decision, it is nevertheless inadequate if that record fails to reveal that the trial court actually considered the appropriate factors. While we would agree that there are occasions where an appellate court can find support for a trial court's decision by an independent review of the record, *see Bowman v. Brooklyn Pet Hospital,* 311 Minn. 526, 247 N.W.2d 424 (1976), such action is improper where, as here, it is unclear whether the trial court considered factors expressly mandated by the legislature. *See Heaton v. Heaton,* 329 N.W.2d 553, 554 (Minn.1983) (record must reflect that trial court did consider the needs of the child). Accordingly, we reverse the Court of Appeals on this issue and remand the case to the trial court for reconsideration and express findings on the factors listed in Minn.Stat. § 518.64.

Appellant raises two more issues which merit attention in providing the trial court with guidance on remand. He argues that since the original decree was based upon a stipulation by the parties, the court should be reluctant to modify any award based upon that stipulation. In marriage dissolution cases, "when a stipulation fixing the respective rights and obligations of the parties is central to the award, the trial court reviewing the original order or decree should view it as an important element because it represents the parties' voluntary acquiescence in an equitable settlement." *Claybaugh v. Claybaugh,* 312 N.W.2d 447, 449 (Minn.1981); *see also Ramsay v. Ramsay,* 305 Minn. 321, 323–24, 233 N.W.2d 729, 731 (1975). When the stipulation includes child support, however, it is afforded less weight. "Child support requirements, relating as they do to the non-bargainable interest of the children, are less subject to restraint by stipulation." *Kaiser v. Kaiser,* 290 Minn. 173, 180, 186 N.W.2d 678, 683 (1971). In *Kaiser,* this court held that merely showing an increase in the noncustodial parent's income, without any evidence of a change in circumstances for the custodial parent and child, was insufficient grounds on which to alter the parties' stipulation. *Id.* at 182, 186 N.W.2d at 684. We have stressed that the welfare of the child takes precedence even if the case involves a stipulation. *Petersen v. Petersen,* 296 Minn. 147, 148, 206 N.W.2d 658, 659 (1973).

3. Finally, appellant argues that the trial court should take into consideration, in determining a child support award or modification, ordered noncash payments to the custodial parent. These noncash payments would include such things as insurance coverage for the children and the fair rental value of the family home, where the custodial parent and children are awarded occupancy. The Court of Appeals held that the trial court did not abuse its discretion in refusing to reduce the support award. *Moylan,* 368 N.W.2d at 357.

Because we are remanding this case on other grounds, we need not decide the issue. We note, however, that such noncash contributions can be considered in some cases to be in the nature of child support. *See Kerr v. Kerr,* 309 Minn. 124, 127, 243 N.W.2d 313, 315 (1976). Homestead occupancy by the custodial parent is a factor to be considered because it is not listed as a factor the legislature considered in formulating the child support guidelines. *See* Minn.Stat. § 518.551, subd. 5. Were

this factor to be ignored by the courts, an inequity would result between custodial parents awarded homestead occupancy and those who do not own a home and must rent a unit large enough to accommodate the custodial parent and the children. This is not to say that the child support award must be reduced where the custodial parent is given occupancy of the family home. It is, however, a factor to be considered by the trial courts on a case-by-case basis. All we require is evidence in the findings that this type of ordered noncash payment was taken into consideration in determining the appropriate child support award.

Dependent health insurance coverage, however, is not a factor that needs to be considered because the legislature included that in the formula it devised under the child support guidelines. *See* Minn.Stat. § 518.551, subd. 5. The trial court need not consider this type of noncash contribution.

Affirmed in part, reversed in part, and remanded.

YETKA, Justice (concurring specially).

I concur specially in the result of the majority opinion, but I deem it necessary to explore more fully the implications of applying the child support guidelines not involving public assistance.

Upon in-depth study, it is apparent to me why the author of the legislation advised the senate that the law applied only to welfare cases.

1. Could the legislature pass a statute requiring married parents to provide a minimum dollar support for their children beyond adequate food, clothing, medical care? I think not. It would be considered a gross invasion of the privacy of the family that I predict would be quickly stricken down as being unconstitutional. *See, e.g., Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). This is because some families, even with great financial resources, might want to raise their children in a spartan atmosphere in order to impress upon their children the value of money and the sacrifice and effort required to raise it. Other parents might be extremely generous, granting their children material privileges few other children will ever see or experience in their lifetimes. Such is life. Our courts, in interpreting our constitution and our laws, do not mandate equality in lifestyle; they only mandate that all citizens have an equal opportunity before the law. *Ross v. Moffit,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1973); *see also Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). If, therefore, the legislature cannot impose dollar amounts on married parents in supporting their children, how can it do so with regard to separated, unmarried or divorced parents? I submit that the legislature cannot except when the parents are either unable or refuse to support their children adequately and thereby impose a burden on the taxpayers. Then, and only then, is there a reason for the state to intrude into the custodial support of children. Thus, I believe that the original intent of the legislature was to apply the guidelines only to welfare cases. I believe, however, that the majority opinion is realistic when it finds that the guidelines *should be considered* in all custodial support cases. Since the guidelines are applied to welfare cases, a court will quite naturally refer to them in other child support cases as well. Moreover, the 1984 amendments to the statute do indicate, at least to some degree, that the legislature intends that the courts take the guidelines into consideration in non-welfare cases. Thus, I concur that the guidelines apply to all cases.

2. Can the legislature mandate that a trial judge apply the guidelines to the income of a non-custodial parent without regard to the income of the custodial parent and without regard to other non-cash support of the non-custodial parent? For the reasons that I have outlined in paragraph 1, I believe the obvious answer is no. It would be a violation of the separation of powers doctrine for the legislature to deny a trial court its inherent authority to determine, on the facts *of each case,* what the support shall be. Minn. Const. art. III, § 1; *see, e.g., State v. Olson,* 325 N.W.2d 13 (1982) (it is the judicial function to deter-

mine the exact criminal sentence to be imposed). The language in the statute which authorizes a judge to deviate from the standards by spelling out its reasons, however, saves the statute from being unconstitutional. I agree that a trial judge must set forth his or her findings and the reasons therefor *in every case* regardless of statute. Each case has its unique problems. In one situation, a child may be able to get an adequate education in the public schools and good medical services from an HMO and, therefore, the support provided in the guidelines will be adequate. In other cases, the child may need to be educated in special schools or require the care of medical specialists, in which case the guidelines may prove inadequate. The final decision is that of the trial court whose hands cannot be tied in advance by the legislature. The discretion must be retained by the trial courts to decide each case on its own facts and within the limitations of both parents' financial resources.

3. Let us take a closer look at the guidelines. Minn.Stat. § 518.551, subd. 5 spells out a sliding scale of child support based on the net income per month of the "obligor." Obligor is defined in Minn.Stat. § 518.54, subd. 8 as follows: "'Obligor' means a person obligated to pay maintenance or support." Obligee is defined in Minn.Stat. § 518.54, subd. 7 as being "a person to whom payments for maintenance or support are owed."

The scale ranges from 14% of the monthly net income for one child of the obligor if the obligor's income is from $401 to $500 per month to a high of 25% for one child if the obligor's income is from $1,001 to $6,000 per month. Thus, if an obligor has a net monthly income of $6,000 per month or more or approximately $72,000 per year net income—not an uncommon situation for professional people—the guidelines set a requirement of $1,500 per month for that child or $18,000 per annum. Many would consider that figure without some qualifications as not only unreasonable, but also a flagrant abuse of legislative authority. I submit that is why the majority opinion has interpreted and limited the statute.

Without such limitations, these questions would immediately arise:

a. If the non-custodial parent is the obligor and must pay $18,000 per year, what would be the requirements of the custodial parent? If the custodial parent had individual wealth and income of his or her own, would he or she also have to contribute $18,000 per year to a single child, making a total of $36,000 per year? I see no reason why such an obligation couldn't be imposed under the implications of the guidelines.

b. Would the custodial parent be legally obligated to expend all of the money on behalf of the child? Would the child have a legal right to require an accounting? What would be the social and economic effect of a child receiving support at the $18,000 per annum level when it reaches the age of emancipation?

c. If a duty to account existed, would children of married parents have the equal right to demand that their parents account to them for all money expended on their behalf? If not, would there be a violation of the equal protection clause of the federal or state constitution?

4. As it must be readily apparent, in order for the guidelines to be constitutional, they must be only what the name implies: guidelines for the courts to consult as a reference. They cannot be mandatory, but must be carefully and judiciously applied to the facts of each case. Undoubtedly, one of the objectives of the guidelines is to force separated or divorced parents to support their children more adequately and to relieve the taxpayers of that duty. That is a legitimate and laudable goal, but other remedies are, or should be, available to mitigate the state intrusion into the lives of its citizens entailed by this act.

5. I, therefore, interpret the majority opinion as applying the guidelines set forth in the statute in this manner:

a. While the guidelines apply to all custodial cases, they are only guidelines and are not mandatory.

b. Each parent can be an obligor towards his or her children.

c. All the resources and income of each parent can be considered in arriving at the total support for the child or children.

d. The order for support should be drawn in such a way that the custodial parent not incur legal liability for an accounting to the child or children being supported.

e. The court should, in every case, draft findings and reasons for its support order.

KELLEY, Justice (concurring specially).

I join in the special concurrence of Justice YETKA.