In Re the Marriage of Geraldine FULL-
ER, f/k/a Geraldine Fuller Glover,
Petitioner, Respondent,

v.

Eugene George GLOVER, Appellant.

No. C9–87–1025.

Court of Appeals of Minnesota.

Oct. 27, 1987.

Margaret K. Savage, Briggs & Morgan,
St. Paul, for respondent.

Richard D. Goff, Eugene E. Weyer, Goff,
Kaplan & Wolf, P.A., St. Paul, for appel-
lant.

Heard, considered and decided by
SEDGWICK, P.J., and PARKER and
HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Eugene George Glover appeals from the trial court's order which denied his motion to reduce child support payments and designated a payment of $1,414 per month child support rather than the $1,000 per month previously ordered. We affirm.

## FACTS

The parties' marriage was dissolved pursuant to stipulation on September 30, 1982. Respondent Geraldine Fuller was granted custody of the parties' only child, born January 13, 1979, and appellant was ordered to pay child support in the amount of $325 per month. At the time of the dissolution, appellant's monthly income was $4,458, and he was an employee and vice president of Mentor Corporation, which he co-founded.

In February 1986, respondent brought a motion under Minn.Stat. § 518.64 (1984) seeking an increase in child support to 25% of appellant's monthly income, the figure called for in Minn.Stat. § 518.551, subd. 5 (1984).[1] At the time that the motion was brought, appellant's monthly income had risen to $5,700. Thus, under the guidelines, child support would have been $1,425 per month.

On August 29, 1986, the family court referee recommended that the support payment be increased to only $1,000 per month. He based his recommendation for a downward departure on appellant's voluntary agreement to pay the tuition of $414 per month for the minor child at St. Paul Academy–Summit School. The recommendation was reviewed and affirmed by the trial court on December 1, 1986, and that order was not appealed.

On August 26, 1986, appellant resigned his position with Mentor Corporation. He has claimed that he was specifically requested by the president of the corporation to resign. However, respondent argues that appellant voluntarily resigned his posi-

tion, and has submitted appellant's letter of resignation in support of her claim. (The referee did not make a specific finding of fact regarding this issue.) As a result of the termination of employment, appellant's yearly income was reduced to $28,000, reflecting a sum of $12,000 per year paid to him as a member of the board of directors of Mentor, and $16,000 per year in income from a trust that appellant settled in 1984. The trust contains assets valued at $3,913,-978. There are no restrictions upon appellant's use of the trust assets for living expenses.

On October 7, 1986, appellant moved to reduce the monthly child support due to his loss of income. According to findings made by the referee, appellant's monthly income had been reduced to $2,786. However, on January 7, 1987, the referee recommended that appellant's motion to reduce child support be denied. The referee stated that there had been no substantial change in circumstances to warrant a reduction in child support as set forth in the order dated August 29, 1986. In addition, the referee, in his findings of fact stated:

> Despite [appellant's] representation to the court that he would continue to pay the tuition at St. Paul Academy–Summit School, [appellant] has not previously made that same commitment to the [respondent], thereby making it difficult for [respondent] to make plans for the minor child.

The payment of tuition for the minor child is the primary focus of disagreement between the parties in this matter. In an affidavit dated December 12, 1986, respondent stated that she had requested information from appellant regarding his intentions to continue making the tuition payment but that he refused to disclose such intentions to her. She further stated that she did not feel that the appellant would continue to make the payment unless he prevailed in his attempt to have the child support payment reduced. Appellant admits that at the time of the August 1986

---

1. Minn.Stat. § 518.551, at the time the first motion to modify was brought, calculated support obligations at 25% of obligor's monthly income up to $6,000. In 1986, this statute was amended to calculate support obligations at 25% of obligor's monthly salary up to $4,000. The trial court applied the former figure in calculating appellant's support obligations.

motion, he urged the court to consider the voluntary payments that he was making towards the child's tuition when it determined the proper level of child support. However, appellant argues that he did not represent to the court at that time that he would continue to make the tuition payments if the level of monthly support obligations was raised.

In addition to the above findings, the referee also found (1) that appellant's standard of living was substantially higher than respondent's or the child's, (2) that appellant's substantial wealth, the needs of the child and respondent's acknowledgment that the cost of the child's tuition is an appropriate component of his obligations, warranted an upward departure from the guidelines set forth in Minn.Stat. § 518.-551, subd. 5, and (3) that the sum of $1,414 per month was a reasonable amount of child support. In accordance with this finding, the referee, noting that "[e]quitable considerations warrant a modification of the Order of August 29, 1986," recommended that the judgment and decree of dissolution be amended to require that appellant pay $1,414 per month in child support. This recommendation was affirmed in the district court on March 2, 1987. This appeal follows.

## ISSUES

1. Did the trial court abuse its discretion in refusing to grant appellant's motion to modify the August 29, 1986, order?

2. Did the trial court abuse its discretion in increasing the monthly child support payment to $1,414 per month?

## ANALYSIS

### I.

█ The proper standard for an appellate court to employ when reviewing the trial court's disposition regarding a motion to modify a child support order has been set out in *Moylan v. Moylan*, 384 N.W.2d 859 (Minn.1986). The *Moylan* court stated:

It is well established that the decision to modify a child support order lies in the broad and sound discretion of the trial court, and an appellate court will reverse for an abuse of discretion only where it finds a "clearly erroneous conclusion that is against logic and the facts on the record."

*Id.* at 864. "This discretion, however, must be exercised within the limits set out by the legislature." *Id.* These limits have been established in Minn.Stat. § 518.64, subd. 2. It provides:

The terms of a decree respecting maintenance or support may be modified upon a showing of one or more of the following: (1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party; (3) receipt of assistance under sections 256.72 to 256.87; or (4) a change in the cost-of-living for either party as measured by the federal bureau of statistics, any of which makes the terms unreasonable or unfair. * * * On a motion for modification of support, the court shall take into consideration the needs of the children and the financial circumstances of each party's spouse, if any.

*Id.* According to *Moylan*, the statute requires a two-step analysis: (1) Do any of the four factors listed in the statute, alone or in combination, create a substantial change in circumstances warranting a modification of support?; and (2) If so, after considering the needs of the children and the financial situation of the parties' spouses, what modification should the court make? *Moylan* at 864. The burden is on the moving party to:

show that the support terms are unreasonable and unfair because either (a) the earnings of a parent have substantially increased or decreased, *or* (b) the need of a party has substantially increased or decreased; *and* the court shall further consider the needs of the children * * *.

*Heaton v. Heaton*, 329 N.W.2d 553, 554 (Minn.1983).

Appellant argued before the trial court that the termination of his employment with Mentor Corporation had resulted in a substantial decrease in his monthly income, and this decrease constituted a substantial

change in circumstances making the terms of the prior modification unfair.

The trial court's rejection of appellant's argument is amply supported in the record. While appellant has, indeed, experienced a decrease in *income* as a result of the termination of his employment with Mentor, he continues to be a man with substantial wealth. The assets of his trust, valued at almost $4 million dollars, provide him with a very comfortable life. The trial court properly took cognizance of the quality of appellant's lifestyle as compared to respondent's and the minor child's. We fail to discern any hardship to appellant traceable to his resignation.

This court previously has upheld a refusal to modify a spousal maintenance award where, despite the obligor's loss of employment, there had been no decline in his lifestyle. *Savoren v. Savoren,* 386 N.W.2d 288 (Minn.Ct.App.1986). In this case, we agree with the trial court's conclusion that appellant's loss of income did not constitute a change in circumstances which warranted a modification of the August 29, 1986, order.

In view of our determination that the trial court did not err in concluding that there had been no substantial change in circumstances making the prior order unfair, we need not address whether appellant voluntarily resigned from Mentor Corporation or was, in effect, fired. While generally a referee should inquire into whether the loss of employment was occasioned by the obligor's own action and, if so, whether that action was taken in good faith, *Ulrich v. Ulrich,* 400 N.W.2d 213 (Minn.Ct.App.1987), *Giesner v. Giesner,* 319 N.W.2d 718 (Minn.1982), here the trial court apparently found such inquiry unnecessary. The trial court ultimately concluded that regardless of whether appellant's resignation from Mentor was made in good faith or bad, he was capable of meeting the obligations imposed upon him under the August 1986 order, and that no substantial change in circumstances existed which warranted modification of the order. We agree with the trial court's assessment.

## II.

■ Appellant next cites as error the trial court's action in ordering the monthly support payment to be $1,414, based on appellant's failure to assure the respondent that he would continue to make the tuition payments at St. Paul Academy–Summit School.

Appellant argues that the court's action was improper because respondent had made no motion seeking a modification in support. Thus, appellant claims he had no notice that the court was considering a change in child support, and that he did not have the opportunity to contest this order. Appellant's argument is meritless. Clearly he had notice that the tuition payment for the minor child's education was at issue. In fact, appellant himself originally placed the tuition payments in issue in August 1986 when he requested that the court take the payments into consideration in deciding whether to grant respondent's motion for increased support. Further, respondent's affidavit, dated December 12, 1986, indicates that she was concerned over her inability to get a commitment from the appellant that he would continue to make the tuition payments. This affidavit, by itself, was sufficient to give the appellant notice that the matter of child support payments was a problematic one, and court assistance was being sought. *See Papaik v. Papaik,* 235 Minn. 393, 51 N.W.2d 68 (1952) (wife was provided with sufficient notice of the husband's request to modify child support payments through the husband's affidavits, even though he had not filed a motion to be relieved of the payments). In addition, appellant had an opportunity to address this issue when he petitioned for district court review of the referee's recommended order.

■ Appellant next argues that the order directing child support payments of $1,414 per month was a "modification" as that term is used in Minn.Stat. § 518.64. He argues that because the court did not comply with the requirements for modification set forth in the statute and in *Moylan,* the court's order was erroneous. As support for his argument, appellant cites the

use of the term "modification" in the trial court's order. We believe the trial court's use of that term was ill advised. It is clear that the trial court intended not to actually modify the previous order but to ensure that appellant would comply with his obligations under it.

The order of the trial court did not change appellant's child support obligation. Under the August 1986 order, appellant was to pay $1,000 per month in child support. This was a substantial departure from the amount called for in the guidelines ($1,425). The departure was based on appellant's representations to the court that he would continue to pay the $414 per month for the child's tuition. Therefore, under the August 1986 order, appellant's total obligation was $1,414 per month. When he sought a modification of that prior order, there was a strong indication that he would refuse to make the tuition payments unless he was successful in reducing his monthly obligation. Therefore, the court took steps to insure that the obligations under the August 1986 order would be met. The court's action was well within its equitable power to protect the interests of the minor child.

The equitable authority of the court in cases involving the welfare of a child was recognized by the Minnesota Supreme Court in *Rabuse v. Rabuse*, 304 Minn. 460, 231 N.W.2d 493 (1975). The *Rabuse* court noted that the legislature has recognized the existence in the courts of a broad jurisdiction for the protection of infants. *Id.* at 462, 231 N.W.2d at 494. The court summarized this power as follows:

> "It has long been recognized that courts of equity may exercise their jurisdiction for the protection of the persons and estates of infants, even if they are not parties to a litigation. * * *

> "This jurisdiction is broad, comprehensive, and plenary, and is not confined to cases of a strictly fiduciary character. In all suits or legal proceedings, of whatever nature, in which the personal or property rights of a minor are involved the protective powers of a court of chancery may be invoked whenever it be-

comes necessary fully to protect such rights."

*Id.* at 462–63, 231 N.W.2d at 494–95 (quoting 42 Am.Jur.2d, Infants, § 22).

We believe that it was under such equitable power, not under Minn.Stat. § 518.64, that the court acted when it designated the monthly support payment at $1,414. It was, in the referee's words, "equitable considerations" which warranted the change from the previous order. Appellant's vacillation on his agreement to continue to pay for the child's tuition caused respondent difficulty in making plans for the child. The record indicates that the child was disturbed by the uncertainty brought about by appellant's failure to assure her that she could continue to attend St. Paul Academy. Surely, such uncertainty did not serve her best interests. Finally, were it not for the dissolution of the parties' marriage, we find it hard to believe that payment of the child's tuition would have become such a divisive issue. It is the duty of the trial court to minimize the financial consequences of a dissolution for the minor child. *Kreidler v. Kreidler*, 348 N.W.2d 780, 785 (Minn.Ct. App.1984). Here the trial court's action not only minimized potentially detrimental financial consequences for the child but lessened the actual emotional consequences for her as well. The trial court's action was within its equitable powers, was well supported by the record and was a proper exercise of its discretion. We will not disturb it.

### DECISION

The trial court properly adhered to the provisions of Minn.Stat. § 518.64 in making its finding that there had not been a change in circumstances sufficient to warrant a reduction in the child support. Further, the court acted within its equitable power when it ordered the appellant to pay $1,414 per month in child support.

Affirmed.