COUNTY OF NICOLLET, for itself and on behalf of the Nicollet County Social Services, Appellant,

v.

James Irvin LARSON, Respondent.

No. C9–87–361.

Supreme Court of Minnesota.

April 8, 1988.

Paul H. Tanis, Jr., Sp. Asst. Nicollet Co. Atty., St. Peter, for appellant.

LaMar Piper, St. James, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Craig R. Anderson, Sp. Asst., St. Paul, for amicus curiae Minnesota Com'r of Human Services.

## OPINION

AMDAHL, Chief Justice.

The defendant, respondent, James Irvin Larson, was sued by Nicollet County for reimbursement of past public assistance payments made to support his child under Minnesota Statutes Section 256.87, subdivision 1 (1986). Nicollet County also petitioned to have Larson's continuing support obligation determined pursuant to Minnesota Statutes Section 256.87, subdivision 1a (1986). A hearing was held, and the trial court issued its findings and conclusions. The trial court awarded Nicollet County the sum of $1,562.50, which comprised $1,412.50 reimbursement for past public assistance paid and $150.00 in attorneys fees. The trial court also ordered Larson to make ongoing monthly payments of $263.00 to Nicollet County as continuing support.

The sole basis for the trial court's award was its determination that the child support guidelines, Minnesota Statutes Section 518.551, subdivision 5 (1986), applied to determine the amount of past and continuing support Larson could be forced to pay pursuant to Section 256.87. The attorneys fee award was justified by implied incorporation of Section 518.14 into the reimbursement statute.

The court of appeals reversed, 413 N.W. 2d 217, holding that the child support guidelines are not to be used to determine past or ongoing reimbursement. Rather, the court of appeals held that under the reimbursement statute, the trial court must make findings, based on the evidence, of Larson's ability to pay. In addition, the court of appeals held that attorneys fees

were not proper since Section 256.87 does not expressly provide for them.

Nicollet County petitioned this court for further review. The Commissioner of Human Services applied for and was granted amicus curiae status. We agree with the court of appeals that Section 256.87, subdivision 1 does not contemplate use of the child support guidelines in determining the amount owed by a parent in a reimbursement action for public assistance already paid. This must be determined on a case by case basis under an ability to pay standard. We also agree that attorneys fees are not authorized under Section 256.87. However, we hold that the child support guidelines do apply to determining the amount of ongoing support the county can seek from a parent. However, the guidelines are just guidelines and are not to be conclusive. After a hearing, with an opportunity to present evidence on income, expenses and the like, the trial court must make specific findings and determine whether to apply the guidelines as written or whether to depart upward or downward. Consequently, we affirm the court of appeals in part, reverse in part and remand to the trial court for further proceedings in accordance with this opinion.

On September 12, 1984, the marriage of James Irvin Larson and Jada May Larson was dissolved by judgment and decree. As part of a stipulated settlement, James Larson agreed to pay $150.00 per month as child support for the couple's one child. Each party was represented by counsel at the time the stipulation was made. The trial court accepted the stipulation.

Mrs. Larson began receiving AFDC payments in November 1985. At the same time, Mrs. Larson assigned her rights to collect child support to Nicollet County. From November 15, 1985 through November 30, 1986, Nicollet County expended $5,245.00 on behalf of the child. Over that period of time, Larson made timely payments of $1,680.00 to Nicollet County, which was the amount due under the stipulation. At the hearing, Nicollet County sought to limit the evidence to application of the child support guidelines to Larson's income.

The evidence showed that Larson's net monthly income was $1,052.23. Nicollet County then had its witness apply the child support guidelines, Minnesota Statutes Section 518.551, subdivision 5 (1986), to Larson's income ($1,052.23 × .25) to arrive at a figure of $263.06 support per month. Since Larson's income was relatively stable throughout the relevant time period, Nicollet County multiplied the $263.06 figure by 12½, representing the amount of time AFDC payments were made. A total of $3,288.25 was found, from which $1,680.00 (the amount paid by Larson) was subtracted, leaving a balance due of $1,608.25 in past support and $263.06 per month continuing.

Larson sought to introduce evidence of his actual expenses. He also showed that Nicollet County's witness had no knowledge of his actual expenses. The County's attorney objected on relevance grounds since his position was that the guidelines applied without regard to actual expenses. The trial court allowed some of the evidence in and then did its own calculations based on "a liberal monthly expense amount." The trial court found that Larson's reasonable monthly expenses were $981.70 and his income was $1,052.23. There is some dispute as to the expense items, offered into evidence, accepted by the court and used to determine the "liberal amount." The trial court then applied the guidelines and ordered $263 per month be paid, even though the expenses found plus support payments made under the stipulation exceeded his income. The court held that Larson must reduce his expenses and pay pursuant to the guidelines.

## 1. REIMBURSEMENT FOR PAST SUPPORT

■ The trial court erred in concluding that the child support guidelines are to be used to determine the amount owed by a parent in reimbursement of past public assistance paid. Section 256.87, subdivision 1 states:

A parent of a child is liable for the amount of assistance furnished under sections 256.72 to 256.87 to and for the benefit of the child, including any assistance furnished for the benefit of the caretaker of the child, which the parent has had the *ability to pay*.

(emphasis added). This subdivision does not refer to the child support guidelines in any way. Rather, it requires reimbursement on an ability to pay standard. The court of appeals correctly analyzed this issue in this and prior cases. We agree that it is within the trial court's discretion "to order reimbursement and how much reimbursement to order. Reimbursement is governed by two standards: 1) the parent's ability to pay, and 2) the amount of assistance furnished to and for the benefit of the child. Minn.Stat. § 256.87, subd. 1; *Hennepin County v. Geshick,* 387 N.W.2d 439, 441 (Minn.App.1986)." *State, Region VIII North Welfare v. Evans,* 402 N.W.2d 158, 161 (Minn.App.1987).

Of course, the parent's ability to pay can only be determined after an evidentiary hearing. To make that determination, the trial court must hear evidence of income, expenses, assets, liabilities and other pertinent data. Then, detailed findings of fact should be drawn in support of the ability to pay determination.

Nicollet County argues that this result unfairly burdens the county in favor of the parent. There can be no doubt that "the primary obligation of support of a child should fall on the parent and the County should only be expected to contribute to the extent that the parent is unable." *County of Anoka v. Richards,* 345 N.W.2d 263, 267 (Minn.App.1984); *see Haugen v. Swanson,* 222 Minn. 203, 206, 23 N.W.2d 535, 536 (1946). There can be no other rule since the parent has the primary responsibility to support the child. *See, e.g., Mund v. Mund,* 252 Minn. 442, 445, 90 N.W.2d 309, 312 (1958). We agree that only when the parent does not provide for the child should the government step in.

However, that policy is served by the rule we enunciate in this case. Larson must shoulder the burden of the support provided to his child to the extent that he is able to pay. If, after a hearing, it is determined that he can reimburse some portion of the assistance expended by Nicollet County, he must do so. We note that under this standard, a parent could be required to pay more than the guidelines amount.

On the other hand, to blindly apply the guidelines to past reimbursement could lead to harsh and unfair results. In this case, the stipulated child support was $150 per month. Presumably, this amount was fair under the circumstances, as it was approved by the dissolution court. The statute states that where, as here, both parties are represented by independent counsel, the stipulation shall be approved unless it is against the interests of justice. Minn.Stat. § 518.551, subd. 5 (1986). It goes without saying that a trial court must examine the stipulation to determine if it is in the interests of justice. Once that determination is made and the stipulation is approved, the parties should be able to rely on that to some degree. Under the rule advocated by Nicollet County, a parent could be subject to a retroactive modification of support up to the guidelines amount even if the parent has no real ability to pay it. We hold that Section 256.87, subd. 1, does not authorize such a result. Nicollet County fears that spouses might stipulate to unreasonably low support payments. This fear is unfounded. First, the dissolution court should not, and indeed will not, approve such a stipulation. Second, if the stipulated amount is below the parent's ability to pay, the county can properly seek reimbursement above that amount.

However, this issue must be remanded for a hearing to determine what Larson's actual ability to pay is for the period of time Nicollet County seeks reimbursement. There is sufficient dispute as to the evidence offered, presented and relied on by the parties and trial court that it would be improper for this court to make the ultimate determination.

## 2. REIMBURSEMENT FOR ONGOING SUPPORT

■ The court of appeals determined that the same rule must apply to an order

for ongoing support and held that the child support guidelines similarly do not apply. We disagree.

First and foremost, the statute authorizing ongoing reimbursement expressly refers to Chapter 518 and shows that the legislature intended the guidelines be used to determine the amount of ongoing reimbursement. This section of the statute states:

> In addition to granting the county or state agency a money judgment, the court may, upon a motion or order to show cause, order continuing support contributions by a parent found *able to reimburse* the county or state agency. Except as provided in subdivision 4, the order shall be effective for the period of time during which the recipient receives public assistance from any county or state agency and for five months thereafter the order shall *require support according to chapter 518.*

Minn.Stat. § 256.87, subd. 1a (1986) (emphasis added).

While the reference to Chapter 518 is rather inartfully drawn and could be subject to more than one interpretation, we agree with Nicollet County that the legislature intended the amount of *ongoing* reimbursement be determined with an eye toward the guidelines.[1]

Furthermore, the statute clearly denominates ongoing reimbursement as "continuing *support* obligations." (emphasis added). As we held in *Moylan v. Moylan*, 384 N.W.2d 859, 860 (Minn.1986), the guidelines apply "in *all child support cases.*" *Id.* (emphasis added). Unlike past reimburse-

ment under subdivision 1 which is really in the nature of a collection action, an order of ongoing reimbursement under subdivision 1a is in the nature of child support. While reimbursement actions are a separate cause of action from actions for child support, *County of Anoka v. Richards,* 345 N.W.2d at 267, it does not mean that *Moylan* is inapplicable. To the contrary, *Moylan* indicates that the guidelines should apply to ongoing reimbursement since it is in the nature of child support even though it arises from a separate cause of action.

■ However, even though the guidelines apply to actions under Section 256.87, subd. 1a, the inquiry does not end there. Reference to the guidelines is only the beginning of the inquiry. It must be remembered that Section 518.551, subd. 5 establishes guidelines. They are not absolutes, nor can they be blindly applied without regard to reality. The guidelines expressly authorize examination of the earnings, income and resources of the parents in determining their application. Furthermore, the needs and standard of living of the children as well as the level of AFDC payments are to be considered. Lastly, the guidelines provide that express findings be made if the trial court departs from strict application of the guidelines. Minn.Stat. § 518.551, subd. 5(e).

However, nowhere do the guidelines themselves expressly provide for examination of a parent's actual expenses in calculating the amount to be paid. We believe such evidence must be allowed and considered independent of the guidelines. We

---

1. The court of appeals held that Section 256.87, subd. 1a required ongoing reimbursement at an ability to pay standard while AFDC payments were being made and then according to the guidelines for the five month period after AFDC payments had ceased. 413 N.W.2d at 220; *see Geshick,* 387 N.W.2d at 441. While the statute can be read in this way, to do so would lead to absurd and unworkable results. At the very least, such a reading would require bifurcated orders to deal with the varying amounts to be paid. More than likely, however, a second hearing would have to be held at the time AFDC payments ceased to determine the new amount under the guidelines. Not only would this be unduly burdensome to the courts and litigants,

it does not reflect the probable intent of the legislature. We are aided in reaching this conclusion by noting that when the 1983 amendment to Section 256.87, subd. 1a was proposed, the Bill provided for ongoing reimbursement during the time public assistance is paid "and for 90 days thereafter, *and* shall order support according to chapter 518." S.F. 545, 1983 Leg. Sess. This language clearly shows an intent to incorporate the guidelines. However, when the first official engrossment was made, the word "and" was dropped, creating the existing ambiguity. As examination of the legislative history fails to show any reason for the change, we believe it to be a typographical error.

need not address the potential constitutional issue that might arise if the guidelines were to be applied without regard to a parent's actual, reasonable and necessary expenses since we hold that a trial court must consider such evidence and incorporate that into its findings.

Basic fairness demands that both the county and the parent against whom an order for ongoing reimbursement is sought can introduce evidence of expenses in addition to the other evidence admissible under Section 518.551, subd. 5(d). The parent can seek to show that, under the particular facts, the guidelines impose an undue burden and should be departed from downward. By the same token, the county can seek to show that the parent's expenses are unreasonable or that the parent is otherwise able to meet the burden imposed by the guidelines. In addition, the county may seek to show that the evidence supports an upward departure. If a parent can afford to make ongoing reimbursements in excess of the guidelines, it is only fair that the parent do so since the parent has the primary responsibility.

Our basic point here is that the trial court must gather all relevant evidence, including evidence of expenses, and make a decision based on that evidence. Only then can the trial court know whether to apply the guidelines as written or to depart therefrom up or down. *See Moylan*, 384 N.W. 2d at 866–67 (Yetka, J., concurring specially). While the guidelines will undoubtedly apply to the majority of cases, there will be cases where the parent can show that a departure is necessary. Only if findings are made in all cases can a reviewing court know that the guidelines were applied in accordance with the principles enunciated herein.

As to this issue, we hold that the guidelines do apply to actions under Section 256.-87, subd. 1a, but that evidence of expenses must be allowed in addition to the other factors found in the guidelines. Therefore, we reverse the court of appeals on this issue and remand to the trial court for a hearing on the merits.

## 3. ATTORNEYS FEES

 Lastly, we agree with the court of appeals that attorneys fees are not allowable in reimbursement actions. The reimbursement statute expressly authorizes only "costs and disbursements of the action." Minn.Stat. § 256.87, subd. 1 (1986). Had the legislature intended to allow for recovery of attorneys fees, it would have provided for them in Section 256.87, along with the recovery of costs. It cannot be said that the reimbursement statute incorporates the dissolution act attorneys fees provision found at Section 518.14.

Affirmed in part, reversed in part and remanded to the trial court for further proceedings in accordance with this opinion.