In re the Marriage of: Mary Katherine **DIGATONO**, Petitioner–Respondent,

v.

Todd Anthony **DIGATONO**, Appellant.

No. C2–87–427.

Court of Appeals of Minnesota.

Oct. 27, 1987.

Review Denied Jan. 15, 1988.

Robert B. Varco, Anoka, for Mary Katherine Digatono.

Donald A. Hillstrom, Minneapolis, for Todd Anthony Digatono.

Heard, considered and decided by LANSING, P.J., and CRIPPEN and MULALLY,* JJ.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. In appellant's notice of appeal he disputes a trial court finding in February 1987 that he was in contempt of court. The court imposed a

**OPINION**

CRIPPEN, Judge.

The major issue in this case is whether the trial court abused its discretion determining that respondent should be the sole legal and physical custodian of two minor children. Appellant challenges the sufficiency of evidence on the finding that respondent is the primary parent. Appellant also challenges (1) the sufficiency of evidence to support the trial court's finding that the mother is not an unfit parent, (2) the sufficiency of evidence to support the trial court's finding that joint legal custody would not be appropriate in this case, (3) the trial court's exercise of discretion on visitation rights, division of debts of the parties, and award of attorney fees, and (4) the trial court's decision requiring him to pay as child support that portion of his Veteran's Administration benefits allocated to the children.[1]

**FACTS**

a. Primary parent determination

The parties presented conflicting evidence on the furnishing of child care by the parents both for the period ending March 1984 when the children were four and five and for the remaining 15 months before the June 1985 separation when respondent was employed but appellant was not. On appeal, appellant challenges these findings of the trial court:

> Both parents testified as to various factors relating to primary parenting, and as expected their testimony was in fact significantly different. However, the evidence is clear. Prior to Mr. Digatano losing his job in March of 1984, Mrs. Digatano was the primary caretaker of the children. She was responsible for preparing and planning virtually all of the meals up to that time. Bathing, grooming and dressing were also her pri-

conditional sentence in the contempt proceedings and that determination is a nonappealable order. *See Becker v. Becker,* 300 Minn. 512, 513, 217 N.W.2d 849, 850 (1974); *Lundell v. Lundell,* 387 N.W.2d 654, 657 n. 2 (Minn.Ct.App.1986).

mary responsibility, with Mr. Digatano perhaps bathing the children four or five times a month. She was the person who purchased clothing. It appears that both parties may have shared in the actual laundering of clothing. With respect to provision of medical care, Mrs. Digatano made the children's doctor appointments, and the parent who was home actually took the children to the doctors. Mrs. Digatano arranged social activities for the children. Mr. Digatano was apparently not very social, and therefore was not involved in this aspect of the children's lives. Mrs. Digatano arranged babysitting or daycare for the children unless Mr. Digatano's parents were to be babysitting, in which case Mr. Digatano arranged those events with his parents. The parties appear to have shared in putting the children to bed and getting them up, but it was Mrs. Digatano's function to comfort them in the middle of the night when necessary.

With regard to discipline, it appeared that Mrs. Digatano was responsible for primary discipline. She testified that she used "time out" or sending the children to their rooms as a primary discipline, and also occasionally spanked the children. There is no evidence that she engaged in any abusive behavior toward her children.

Mrs. Digatano taught the children manners and toilet trained them. She enrolled the children in school and made arrangements for attending teacher conferences. While the parties were married, Mr. Digatano was not involved in school conferences and other such activities. It appears that many people, including both parties and their relatives, were involved in reading to the children.

The religious training provided to the children was the sole responsibility of Mrs. Digatano. She took the children to church most Sundays, and arranged to have the children baptized. Only on one occasion during the course of the marriage did Mr. Digatano attend church with them.

After Mr. Digatano stopped working in March of 1984 and until the separation in June 1985, he was at home during the day while Mrs. Digatano worked. Notwithstanding that fact, even though it appears that Mr. Digatano became more involved in some of the basic physical care for the children, it appears that Mrs. Digatano still was responsible for clothing and washing the clothing for the children. She still prepared the large majority of meals after work. She was still responsible for picking up and cleaning the house, either before or after work. She was still responsible the majority of the time for bathing the children. Apart from providing the majority of physical care during this period, Mrs. Digatano also continued to provide the majority of intellectual and emotional care. Thus, Mrs. Digatano maintained her primary caretaker status during the period in which she was the family's primary breadwinner.

The conclusion the Court draws from the testimony presented at trial, after applying that evidence to the *Pikula* standards, is that the petitioner, Mary Digatano, was the primary parent for the minor children of the parties.

### b. Other Custody Questions

Appellant also claims that the mother is unfit to be the custodial parent. There are two elements to his claim. First, Mr. Digatano argues that respondent is not a proper disciplinarian and second, that respondent's relationship with her boyfriend, Jimmy Richardson, places the children in danger. The trial court found that the mother was not unfit and noted appellant's history of aggression.

The trial court noted the presumption in favor of joint legal custody established in Minn.Stat. § 518.17, subd. 2 (1986). The court applied the factors of the statute, concluding that "it would be detrimental to the children to allow both parents to have joint authority over their upbringing, in light of the difficulties the parents have in dealing with each other." The court awarded sole legal and physical custody to the mother. The trial court granted appellant visitation of three weekends per

month, a two week summer visitation, and various holiday visitation.

The court awarded child support in accordance with the statutory guidelines, but because appellant was unemployed, he was ordered to report to court services regarding his employment every month. Further, the trial court held that as long as appellant is receiving Veterans Administration benefits, the amount allocated to the children shall be payable and credited to his child support obligation. The trial court did not grant either party attorney fees.

## ISSUES

1. Did the trial court err in its findings pertinent to placement of custody of the children?

2. Did the trial court abuse its discretion in deciding on a specific pattern of visitation contacts?

3. Did the trial court abuse its discretion in dividing the debts of the parties and refusing to award attorney fees?

4. Did the trial court err in requiring that Veteran's Administration dependency benefit be paid to the children as child support?

## ANALYSIS

### I.

#### A. Primary Parent Finding

Appellant argues that the evidence shows that he was the primary parent, that this fact appeared beyond a reasonable doubt for the period of 15 months preceding separation, and that the trial court's findings rest wholly on respondent's testimony and the disregard of evidence discrediting that testimony. He also contends that a custody report supporting placement of custody with respondent was based mostly on circumstances after the parties separated and that the report failed to take into account the mother's relationship with Jimmy Richardson. In contrast, the trial court found the evidence "clear" that the mother was the primary parent.

■ Appellant contends that the integrity of Minnesota custody law is meaningless if we do not reverse here. Appellant's argument, however, is founded on the premise, regarding circumstances of the family before June 1985, that we should disbelieve respondent's testimony and believe the conflicting testimony offered by appellant. The issue is one of credibility of witnesses and the law is clear in such a case that we defer to the findings of the trial court unless they are clearly erroneous. Minn.R.Civ.P. 52.01. This is not a case where undisputed evidence gives us reason to conclude that the trial court has disregarded standards of law.

#### B. Unfitness finding

Appellant argues that respondent is not a proper disciplinarian and that her relationship with her boyfriend, Jimmy Richardson, placed the children in danger. The court found that the social service and hospital records do not support any conclusion that the mother was in any way abusive toward her children and noted that Richardson does not pose any threat to the well-being of the children. In addition, the court noted that

> Mr. Digatano has been significantly abusive to the [appellant], both verbally and physically, since prior to separation when he admittedly hit her based on his suspicion she was involved in another relationship. He also has been involved in several other physical altercations with other persons, and in fact lost his prior job as a result of a fight at work. The history of this case is one in which there is no doubt that Mr. Digatano has been abusive to the petitioner, and in fact, there is evidence in the medical reports and child protection reports that the children have expressed concern regarding their father pushing their mother around.

■ The credibility of the parties' testimony and evidence regarding unfitness is a matter for the trial court to determine. The court did not err in finding that the mother is not unfit.

#### C. Joint legal custody

The court considered the factors under Minn.Stat. § 518.17, subd. 1 (1986) and not-

ed the presumption in favor of joint custody. In denying joint legal custody, the trial court stated that

> the turmoil in this relationship has been so intense, and the interrelationships between Mr. and Mrs. Digatano have been so difficult, that any significant contact between the parties is likely to result in further tension, and may in fact result in physical confrontations. Therefore, the Court must find that the parties are unable to cooperate in the rearing of their children to an extent necessary to allow joint custody to be awarded.

■ Evidence in the record supports the trial court's finding. The court did not abuse the discretion accorded to it in rejecting joint custody because of the parents' demonstrated inability to cooperate.

## II.

■ It is well settled that the trial court's determination of visitation to the noncustodial parent will not be set aside unless clearly erroneous. *See Griffin v. Van Griffin*, 267 N.W.2d 733, 735 (Minn. 1978). The court granted visitation rights to appellant for three weekends per month, two weeks each summer, and various holidays. It is evident that the trial court has carefully considered the details of visitation and taken into account the positions of the parties on that subject. We see no abuse of discretion in the determination of visitation.

## III.

Appellant challenges the trial court's division of the debts of the parties and both parties appeal the trial court's refusal to award attorney fees. The division of debts must be done in a just and equitable manner. *Justis v. Justis*, 384 N.W.2d 885, 889 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 29, 1986). The court identified marital debts totaling $1776 and of these, appellant was required to pay $1066 and respondent $710, including the $460 that respondent paid toward these joint debts prior to dissolution of the marriage. The parties were required to split the burden of paying mobile home taxes. Appellant was ordered to pay income taxes that the court found he incurred after the parties separat-

ed. The division of debts in this case is supported by the record and was not an abuse of discretion.

The trial court has such broad discretion in the award of attorney fees that a reviewing court will rarely reverse the trial court on that issue. *Solon v. Solon*, 255 N.W.2d 395, 397 (Minn.1977). Respondent claims appellant has paid his own attorney fees and has some ability to pay for her legal services. Appellant claims that he has not had funds to pay fees and she should contribute to his costs because she had the advantage of free legal services through a judicare program. The trial court in this case acted well within its discretion in ordering that both parties pay their own attorney fees.

## IV.

■ The trial court did not require appellant to set aside the part of his V.A. benefit allocable to him. The trial court's order does not raise the question whether some part of his personal benefit is reachable for child support. *See Rose v. Rose*, —— U.S. ——, 107 S.Ct. 2029, 2039, 95 L.Ed.2d 599 (1987) (federal law does not preempt Tennessee statute; veteran was properly ordered to pay child support from his veterans' disability benefits). As to the part of the benefit allocated by federal law to the children, there is nothing in the law to support appellant's contention that the award is improper.

## DECISION

The trial court's grant of sole legal and physical custody to respondent was not an abuse of discretion and its underlying fact findings were not clearly erroneous. The court's scheduling of visitation contacts was appropriate. The trial court did not err in its division of the debts of the parties and in its refusal to award either party attorney fees. The trial court properly required appellant to pay his V.A. benefits allocated to the children as child support.

Affirmed.