**In re the Marriage of Lauren Rae ROHRMAN, f.k.a. Lauren Rae Moore, petitioner, Respondent,**

v.

**James MOORE, Appellant.**

**No. C2–87–1917.**

Court of Appeals of Minnesota.

May 24, 1988.

Richard M. Arney, Washington Co. Atty., Jean M. Mitchell, Susan Steffen Tice, Asst. Co. Attys., Stillwater, for respondent.

Martin A. Diaz, Centro Legal, Inc., Minneapolis, for appellant.

Heard, considered, and decided by FOLEY, P.J., and RANDALL and KALITOWSKI, JJ.

## OPINION

FOLEY, Judge.

James Moore appeals the denial of his motion to reduce his child support obligation. He also appeals the trial court's decision to hold him in conditional contempt for his ongoing, willful failure to pay child support. We reverse and remand for further investigation and consideration by the trial court.

## FACTS

James married respondent Lauren Rae Rohrman, f.k.a. Lauren Rae Moore, in early 1979. During their marriage, they had one child, Brittany. They were divorced in 1983. At the time of the divorce, James was earning $1,343 net income per month, and Lauren was earning $1,323 net income per month. Both were employed by 3M. Lauren received custody of the child, and James was ordered to pay $300 a month child support.

James made minimal child support payments during the following two years. The county explored income withholding, but James had filed for bankruptcy, which would have stayed any attempt to withhold income.

In October 1985, James made a motion to decrease his child support obligation from $300 to $100 per month. He based this motion on his contention that while his net income had decreased to $1,200 per month, he was now supporting three children from a prior marriage.[1] The trial court granted James' motion to reduce the child support to $100 per month without expressly determining the legal status of the children he claimed he was supporting.

Lauren returned to court on July 1, 1986, seeking to hold James in contempt for failure to pay his child support. At that time, the trial court learned James' 1984 and 1985 income tax returns revealed James' average net monthly income was almost twice what he reported at the 1985 hearing resulting in the reduction of support. After finding James' net monthly income to

---

1. Lauren's affidavit, submitted at the time of this hearing, indicates she had no prior knowledge of James' claim he had been married before, or that he had other children.

have exceeded $2,100 at the time of the earlier reduction, the court found 1985 support reduction had been procured through fraud and misrepresentation. The court vacated the 1985 order and retroactively reinstated the original $300 per month support order. The court did not hold James in contempt but ordered income withholding.[2]

At the July 1, 1986 hearing, James introduced certified copies of three birth records into evidence. Those birth certificates, apparently introduced to prove his claim of parentage, include the following information regarding the children he claims he was supporting:

> *James Moore Jr.*, born June 30, 1972, birth certificate altered on March 16, 1976 to reflect James Moore's adjudication of paternity.

> *Tyrone James Armstrong*, born July 16, 1973, birth certificate altered on April 24, 1974 to reflect James Moore's affidavit of paternity.

> *Nadine Armstrong*, born February 17, 1975, birth certificate altered on September 22, 1975 to reflect James Moore's affidavit of paternity.

On March 27, 1987, James was fired from his job at 3M. He claims he does not know why he was fired, but he was initially denied unemployment compensation. He was to have a hearing on whether he was eligible for unemployment compensation two weeks after the hearing on the present matter; the record does not reveal the result of this hearing.

In July 1987, James filed the present motion for a modification of child support. He again contended that he was supporting three children by a prior relationship, and that his earnings had substantially decreased as a result of his being fired. Lauren responded to the motion with a "notice of motion and motion," requesting the court deny James' motion and hold him in contempt for his prior failure to pay child support.

James appeared pro se at the hearing. He testified that he was obligated to support the three children presently living with him, as he had been named the father on the children's birth certificates. He did not bring copies of the birth certificates to the hearing or present any other proof of his obligation to the children. Neither the parties nor the court appears to have been aware that the birth certificates of the three children were part of the record of the earlier proceeding.

James also testified that he called 10 prospective employers in the previous week looking for work in the construction industry, but that none of the employers were hiring. He did not testify to any other attempts to find employment during the previous three and one-half months.

Lauren's affidavit indicates her current net monthly income was $1,840. She testified she receives $800 net income every other week. She testified that her current husband earns approximately $60,000 gross per year.

The trial court denied James' motion to reduce the child support. The court made the following findings of fact:

6. That the Respondent testified that he has three children that he claims are his, are living with him and who he is supporting because he does not know where the children's mother is. He admitted that there has been no adjudication of paternity nor any Court Order requiring him to pay for their support. The Respondent did not bring with him any proof that said children were his or that he was legally obligated to pay for their support.

\* \* \* \* \* \*

8. That the Respondent testified that he has sought employment in the construction industry in the last week but brought no verification with him of the alleged applications.

9. That the Respondent further testified that he was not seeking any other type of employment even though he

---

2. While some child support has been paid as a result of withholding, James is presently over $5,500 in arrears.

claims that he has been without any income in the past four months.

The court concluded James had failed to prove that he had made a good faith attempt to obtain employment, and that he was capable of securing employment sufficient to meet his $312 child support obligation.[3]

The court also found James had a history of willful failure to pay his child support obligations and adjudicated him in conditional civil contempt. He was sentenced to spend 60 days in jail, sentence stayed on condition that he pay his child support obligation plus $48 a month in arrearages. The trial court made no findings regarding Lauren's present income.

## ISSUES

1. Did the trial court fail to make sufficient findings in support of its denial of James' motion?

2. Did the trial court err in holding James in constructive contempt where he was not served with an order to show cause?

## ANALYSIS

■ 1. The trial court has broad discretion to grant or deny a motion for child support modification. *Bledsoe v. Bledsoe,* 344 N.W.2d 892, 895 (Minn.Ct.App.1984). The decision will not be reversed unless it is a "clearly erroneous conclusion that is against logic and the facts on record." *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984).

■ A modification of support may be ordered only if the moving party first shows that a substantial change of circumstances has occurred such that the original order is unreasonable and unfair. Minn. Stat. § 518.64, subd. 2 (1986). A substantial change of circumstances may be shown by:

1) substantially increased or decreased earnings of a party;

2) substantially increased or decreased need of a party;

3) receipt of assistance under sections 256.72 to 256.87; or

4) a change in the cost-of-living for either party as measured by the federal bureau of statistics.

*Id.* In determining whether to modify a support order, the court shall take into consideration the needs of the children and shall not consider the financial circumstances of each party's spouse, if any. *Id.*

■ Even if a modification were justified, the amount of the modification cannot be upheld where the record fails to reveal that the trial court actually considered the appropriate factors expressly mandated by the legislature. *Beede v. Law,* 400 N.W.2d 831, 835 (Minn.Ct.App.1987), citing *Moylan v. Moylan,* 384 N.W.2d 859, 865 (Minn. 1986).

While James did not expressly state the grounds upon which he relied in seeking the support modification, the record reveals that he relied on a number of alleged grounds corresponding to the statutory factors: (1) his substantially decreased earnings as a result of his being fired from 3M; (2) his substantially increased needs as a result of his support for three additional children; (3) substantially increased earnings of his ex-wife; (4) decreased needs of Brittany as a result of Lauren's marriage to her present husband. We will address each of these factors separately.

*James' substantially decreased earnings.*

■ While earning capacity is usually not an appropriate measure of income, it may be considered when an obligor's income is unjustifiably self-limited. *Beede,* 400 N.W.2d at 835. An obligor cannot rely on an election to terminate employment to justify a decreased support obligation where the obligor has not made a reasonable effort to find employment to meet the support obligation. *Goff v. Goff,* 388 N.W. 2d 28, 30 (Minn.Ct.App.1986), citing *Gies-*

---

**3.** The support obligation had increased from $300 to $312 pursuant to an automatic statutory adjustment.

*ner v. Giesner*, 319 N.W.2d 718, 719–20 (Minn.1982).

The trial court specifically found that James had not shown he had made a good-faith attempt to obtain employment, and that he had the ability to obtain employment in order to meet his ongoing support obligation. James' only claimed attempts (after four months of unemployment) to seek employment with which to pay his obligations were 10 apparently random calls to construction firms. On this record, we cannot say the trial court abused its discretion in finding James had not made a reasonable effort to find employment and thus had unjustifiably self-limited his income.

*James' increased need because of three claimed dependents.*

■ Minn.Stat. § 257.54 (1986) requires that the parent and child relationship be established under the Minnesota Parentage Act, Minn.Stat. §§ 257.51–.74 (1986).

Neither the trial court nor the parties appear to have been aware of the presence, in the file, of certified copies of the birth records of the children James claims he was supporting. There was no investigation conducted into the propriety of the affidavits submitted in support of the changes made on the birth certificates, and no investigation into whether there actually was an adjudication of paternity in the case of James Moore, Jr.

Given the presence of the birth certificates in the file, the trial court's finding that James failed to provide evidence of the parentage of the children was inadvertently erroneous. A written acknowledgment of paternity creates a presumption of paternity, Minn.Stat. § 257.55, subd. 1(e), which may be rebutted only by clear and convincing evidence. Minn.Stat. § 257.55, subd. 2.

Given the history of misrepresentation in this case, the trial court will also need to determine whether the acts surrounding the changes on the birth certificates conformed to legal requirements. We also note the possibility of criminal charges arising from any perjury committed before the trial court. The entire matter must be investigated in depth.

*Substantially increased earnings of Lauren.*

■ The trial court made no findings regarding Lauren's earnings. At the time of the original decree, her net monthly pay was $1,323. Her current pay is unclear; her testimony indicated slightly over $1,600 a month net, and her affidavit says $1,840 a month.

The trial court erred in its failure to make findings regarding Lauren's income. The trial court is required to make such findings to enable a reviewing court to determine whether it has considered the appropriate factors in coming to its decision. *Moylan*, 384 N.W.2d at 865.

*Brittany's decreased needs as a result of Lauren's new spouse's income.*

■ In a child support determination, the court shall not consider the financial circumstances of each party's spouse, if any. Minn.Stat. § 518.64, subd. 2. James cites no cases which have provided any exception to this rule. We decline to create an exception based on the circumstances of this case.

■ 2. A conditional contempt order (where the trial court imposes a conditional sentence after a finding of contempt) is a nonappealable order. *Becker v. Becker*, 300 Minn. 512, 513, 217 N.W.2d 849, 850 (1974); *Digatono v. Digatono*, 414 N.W.2d 498, 499 n. 1 (Minn.Ct.App.1987). The conditional contempt order issued by the trial court is not appealable at this time.

## DECISION

The trial court's decision to deny James' motion for a decrease in child support is reversed, with directions for the trial court to determine the legal status of the three children James claims he is supporting. The trial court should also make appropriate findings regarding Lauren's income and James' earning capacity and determine whether James' child support obligation should be decreased.

Reversed and remanded.