Ronald Edward ANDERSON, Petitioner, Appellant,

v.

Karen Ann ANDERSON, Respondent.

No. C9–89–1434.

Court of Appeals of Minnesota.

Jan. 23, 1990.

Robert V. Dalager, Fluegel, Anderson, Dalager & Seibel, Ch., Morris, for appellant.

Ann Carrott, Douglas County Atty. and Meredeth Magers, Asst. County Atty., Alexandria, for respondent.

Considered and decided by RANDALL, P.J., and PARKER and SCHUMACHER, JJ., without oral argument.

## OPINION

PARKER, Judge.

On July 5, 1989, the trial court denied Ronald Anderson's motion to reduce his child support obligation, finding that he had not made a good-faith effort to find new employment. The trial court also ordered that if Ronald becomes in arrears in his child support payments, then the accumulated debt shall be deducted from his share of the proceeds from the sale of the parties' former marital home. Ronald appeals the trial court's order. We affirm in part; reverse and vacate in part.

## FACTS

On May 29, 1965, Ronald and Karen Anderson were married. They had two children, Michael Chad, born May 1, 1968, and Kari Lynn, born December 5, 1972. Ronald and Karen were divorced in March 1985.

By the judgment of dissolution, Ronald was ordered to pay $408 per month child support for both children. In November 1987 the parties stipulated that Ronald's child support obligation should be reduced to $300 per month because Michael had reached age 18 and had graduated from high school. The trial court signed an order based on this stipulation.

In July 1988 Ronald lost his job as a salesman because the Alexandria Sears catalog store closed. He received $884 per month unemployment compensation and continued paying the $300 per month child support. His unemployment compensation benefits ran out on February 9, 1989. The next day he petitioned the trial court to reduce his child support obligation to nothing.

Karen opposed Ronald's motion and moved the trial court for an order that should Ronald fail to meet his child support obligation, any arrearages would be deducted from his share of the proceeds from the sale of the former marital home.[1]

The trial court heard the parties' motions on March 21, 1989. Ronald's was the only testimony. He was examined by his attorney, Karen's attorney and the trial court. In addition to stating that he lost his job and that his unemployment benefits had expired, Ronald claimed he had applied for about 20 positions since he lost his job at Sears. Ronald testified that he has the ability to earn an income and "guessed" that he had had about six job interviews. He specifically listed seven locations where he applied for jobs, but said he had not

---

1. Under the original divorce decree, when and if certain contingencies occur, the former marital home is to be sold, with the sale proceeds going toward the mortgage and the parties sharing equally any remaining proceeds. Until the sale occurs, Karen has exclusive use and possession of the home.

received any job offers. He claimed he was still optimistic about finding a job, either in sales or in just about anything else.

On examination by the trial court, Ronald testified that he had worked exclusively in the sales department at Sears since 1977. In addition, he said that he had training and experience at Sears in "just about every conceivable job there is to do."

The trial court found that Ronald had not made "a good faith effort to secure employment" and that he "has not made a showing of the actual efforts made to find new employment." The trial court also found that Ronald had the earning capacity to meet his $300 per month child support obligation and denied Ronald's motion to modify. The trial court ordered that if Ronald failed to meet his child support obligation, the arrearages "shall be deducted from [his] share of the proceeds from the sale of the marital home."

### ISSUES

1. Did the trial court abuse its discretion in denying Ronald's motion to decrease his child support obligation?

2. Did the trial court err in ordering that if any child support arrearages accumulate, they should be deducted from Ronald's share of the proceeds from the sale of the former marital home?

### DISCUSSION

### I

■ The trial court has broad discretion in determining whether to modify a child support order. *Moylan v. Moylan,* 384 N.W.2d 859, 864 (Minn.1986). The trial court should exercise its discretion "with great caution and only upon clear proof of facts showing that the circumstances of the parties are markedly different from those in which they were when the decree was rendered." *Giencke v. Haglund,* 364 N.W.2d 433, 435–36 (Minn.Ct.App.1985) (quoting *Rubenstein v. Rubenstein,* 295 Minn. 29, 32, 202 N.W.2d 662, 664 (1972)). Thus, the trial court's decision should not be reversed unless it reaches a clearly erroneous conclusion that is against logic and the facts in the record. *Moylan,* 384 N.W.2d at 864.

Under Minn.Stat. § 518.64, subd. 2 (1988), the trial court may modify a child support order if one or more of the following is shown:

(1) substantially increased or decreased earnings of a party;

(2) substantially increased or decreased need of a party;

\* \* \* any of which makes the terms unreasonable or unfair.

*Id.*

Even if the moving party demonstrates a substantial decrease in earnings, a trial court may deny the party's motion to reduce the child support obligation if the party unjustifiably self-limited his income. *Hedburg v. Hedburg,* 412 N.W.2d 43, 47 (Minn.Ct.App.1987).

[T]here is no defense if the party directed to pay "has not made a reasonable effort by means of his own selection to conform to an order well within his inherent but unexercised capacities." \* \* \*

If [the decrease in income] was made in good faith, the child and the separated spouse should share in the hardship as they would have had the family remained together.

*Giesner v. Giesner,* 319 N.W.2d 718, 719–720 (Minn.1982). Thus, the petitioner has the burden of proving he made a good-faith effort to meet his child support obligation, but could not do so. *Garcia v. Garcia,* 415 N.W.2d 702, 705 (Minn.Ct.App.1987). If the petitioner unjustifiably self-limits his income, his earning capacity may be considered. *Rohrman v. Moore,* 423 N.W.2d 717, 720 (Minn.Ct.App.1988).

There is no doubt that Ronald is not to blame for his substantially decreased income. He lost his job solely because the Sears store closed. The only evidence in the record regarding Ronald's attempt to find a new job is his own testimony that he applied for approximately 20 jobs and had about six interviews.

We cannot find the trial court to have abused its discretion in denying Ronald's

motion to modify his child support obligation. Ronald had the burden of proving he made a good-faith effort to find a new job. His testimony on his job search was too vague to compel such a finding. He did not document his job search in any way, but merely "guessed" that he applied for 20 jobs and had about six interviews. The trial court's conclusion that this evidence does not show a good-faith effort on Ronald's part cannot be held to be error.

Ronald points to a statement made by the trial court at the hearing on Ronald's motion for a new trial. The trial court said:

> I concluded that a good faith effort was not made and that even though the transcript shows that he made application at these positions, I know these places where he applied. They're in my community and I understand without even knowing what the salary is, that they wouldn't even come close to paying much more than minimum wage, save and except a couple of them. * * * I do not think that a good faith effort was made.

Ronald claims the trial court inappropriately took judicial notice of the wages offered by employers in the Alexandria area. We reject Ronald's analysis, finding it to be a strained interpretation of the trial court's statement. We believe the trial court was merely evaluating the credibility of Ronald's claim of a good-faith effort to find employment against the trial judge's general familiarity with the Alexandria community and its job market.

## II

The trial court ordered that if Ronald becomes delinquent in his child support payments, the arrearages shall be deducted from his share of the proceeds from the sale of the former marital home. Yet, Ronald is not in arrears. The trial court's order is premature and accordingly must be vacated.

We note that Ronald made extraordinary efforts to meet his child support obligation after he lost his job at Sears. He continued to make the $300 per month payment even though he was supported entirely by unemployment compensation. Thus, there is no indication that Ronald has disregarded or will disregard his duty to make child support payments.

If Ronald later becomes in arrears, then Karen can move for determination of the sum owed. If he has grounds, Ronald may move for a reduction of his support obligation and then the trial court could retroactively modify (i.e., forgive arrearages) to the date of that motion. Minn.Stat. § 518.64, subd. 2. Both parties would be given an opportunity to be heard. Ronald would be permitted to document with specificity any attempts to find a new job. If the trial court finds Ronald to be in arrears and, further, that he has not made a good-faith effort to find employment, the trial court can then order Ronald to pay the arrearages and determine the manner of payment.

## DECISION

The trial court did not abuse its discretion in denying Ronald Anderson's motion to reduce his child support obligation. Because Ronald is not in arrears in his child support payments, we hold the trial court's order that future arrearages are to be deducted from Ronald's proceeds from the sale of the former marital home to be premature.

Affirmed in part; reversed and vacated in part.