539 N.W.2d 607 (1995)
In re the CUSTODY OF A.S.R.
Dianne L. and Charles S. RUPPERT, Petitioners, Respondents,
v.
Jason Edward SCHMIDT, Appellant.
No. C3-95-1065.
Court of Appeals of Minnesota.
November 7, 1995.
*608 Walling & Berg, Wright S. Walling, P.A., Gary A. Debele, Kim M. Buttoni, Minneapolis, for respondents.
Arzt Law Office, Philip K. Arzt, Minneapolis, for appellant.
Considered and decided by DAVIES, P.J., and RANDALL and NORTON, JJ.

OPINION
RANDALL, Judge.
Appellant father's child support obligation was originally set at $394 per month, $150 of which was payable monthly and the other $244 accrued as arrearages. After the unexpected death of the child's mother, appellant and respondents, the child's maternal grandparents, agreed to transfer custody of the four-year-old child to respondents. Because the parties were unable to agree on the amount of child support, the issue was submitted to a family court referee. The referee's order modified appellant's child support obligation to $50 per month, based on appellant's low income. Respondents then filed a motion for notice of review. The trial court granted respondents' motion and reversed the referee's order. This appeal followed.

FACTS
Respondents Dianne and Charles Ruppert are the maternal grandparents of A.S.R., who is four years old. The biological mother of A.S.R., Rebecca Ruppert (Rebecca), was murdered on April 24, 1994. After Rebecca's death, the Rupperts were awarded custody of A.S.R.
Appellant Jason Schmidt is the adjudicated father of A.S.R. An order dated October 2, 1992, set Schmidt's child support obligation at $434.57 per month, which was a large upward departure from the child support guidelines. That record shows the following reasoning for the upward departure: At that time, Rebecca earned an approximate adjusted net income of $700 per month, working both a full-time and a part-time job. She was paying $474 per month for A.S.R.'s day care and health insurance. Schmidt's net monthly income was approximately $826. *609 The trial court found these circumstances warranted an upward departure.
On December 31, 1992, Schmidt terminated his full-time employment and enrolled at the University of Minnesota as a fulltime student. In January 1993, he made a motion to reduce his child support obligation to the guideline amount of $62.61 per month.
After a hearing on the motion, the trial court found Schmidt was working 20 hours per week, earning a gross income of $541.66 per month and a net income of $447.22 per month. His stepfather was helping with tuition, room, and board. His expenses were $580 per month, of which approximately $235 were auto-related expenses.
The trial court found Rebecca also wanted to attend college. She was working a fulltime and a part-time job in order to meet her expenses. Excluding health insurance, her and A.S.R.'s living expenses were $1,275 per month, which the trial court found to be reasonable. The expenses for A.S.R. alone were $788 per month, which included $350 per month for day care and $138 per month for health and dental insurance.
On February 3, 1993, based on these findings, the trial set Schmidt's child support obligation at $394 per month, which represented half of A.S.R's needs. Rebecca agreed to accept $150 per month, while the remaining $244 per month would accrue as arrearages, payable when Schmidt finished his education. In its order the trial court found:
The needs of the child cannot be postponed or deferred until the defendant has completed his education. This solution, which provides that the defendant will be responsible for half of those needs, will defer payment until the completion of his schooling. The plaintiff should not carry a disproportionate burden of the financial support of the child.
The February 3, 1993, order was in effect at the time of Rebecca's death. On November 15, 1994, the Rupperts were awarded joint legal custody and Dianne Ruppert was awarded sole physical custody of A.S.R pursuant to an order agreed to by the parties. Dianne Ruppert agreed to provide dependent medical coverage for A.S.R. so long as it was available to her through her employer. Because the parties were unable to agree on child support issues, they were submitted to a family court referee for resolution.
On December 29, 1994, after a hearing, the referee found Schmidt was still enrolled fulltime at the University of Minnesota and had attended summer sessions. He was working as a lab assistant for the University of Minnesota. He was paid at a rate of $6.50 per hour, earning a gross income of $437.80 per month and a net income of $363.31 per month. Child support in the amount of $83.08 was being deducted from each of Schmidt's bi-weekly paychecks, or $180 per month, which represented a payment equal to 49.54% of his income. There were no findings regarding A.S.R's needs or Dianne Ruppert's financial circumstances.
Based on these findings, the referee (1) reduced Schmidt's child support obligation to $50 per month; (2) reserved arrearages accumulated through September 30, 1994, and ordered they not become due until Schmidt completes his education at the University of Minnesota; (3) ordered the accumulated child support payments held by Ramsey County Child Support & Collections to be paid to Dianne Ruppert; and (4) ordered Schmidt to promptly report any change in his enrollment at the University of Minnesota or any change in his employment or income status.
The referee's order was mailed out on December 29, 1994. On January 13, 1995, the Rupperts filed a motion for notice of review pursuant to Minn. R. Civ. R. 53.05(b).[1] On January 17, 1995, pursuant to an order, the motion for review was dismissed as untimely. *610 The Rupperts then filed a motion to vacate the dismissal of the motion for review. On January 26, 1995, a trial court judge granted the motion to vacate the order dated January 17, 1995, thereby reinstating the review proceedings.
On April 3, 1995, in its review order, the trial court vacated the referee's order regarding modification of child support. It held that Schmidt failed to establish a substantial change in circumstances warranting modification of child support. The trial court reinstated Schmidt's child support obligation, pursuant to the February 1993 order, at $394 per month.
Schmidt challenges the trial court's review order. First, he argues the trial court lacked jurisdiction to review the referee's order. Second, he argues the child support modification was proper because of a substantial change in circumstances.

ISSUES
1. Did the trial court lack jurisdiction to review the referee's December 29, 1994, order?
2. Did the trial court abuse its discretion in reversing the referee's order modifying appellant's child support obligation to $50 per month?

ANALYSIS

1. Jurisdiction
The construction of a statute is a question of law and thus fully reviewable by an appellate court. Hibbing Educ. Ass'n v. Public Employment Relations Bd., 369 N.W.2d 527, 529 (Minn.1985).
In Ramsey County, review of a referee's recommended order is permissible under Minn.Stat. § 484.70, subd. 7(d) (1994), which provides:
Review of any recommended order or finding of a referee by a judge may be by notice served and filed within ten days of effective notice of the recommended order or finding.
(Emphasis added.) For purposes of computing filing deadlines, Minn. R. Civ. P. 6.01 provides in relevant part:
In computing any period of time prescribed or allowed by these rules * * * or by any applicable statute, the day of the act * * * from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday.
Furthermore, Minn. R. Civ. P. 6.05 provides that three days are added to any prescribed period where notice is received by mail.[2]
The party aggrieved by a referee's recommended order is obligated to file a timely notice of review under Minn.Stat. § 484.70, subd. 7(d), or jurisdiction is lost. See Koponen v. Koponen, 352 N.W.2d 834, 835 (Minn.App.1984) (construing earlier version of section 484.70, subdivision 7(d)).
Schmidt argues the trial court lacked jurisdiction to review the referee's December 29, 1994, order. Specifically, Schmidt argues, pursuant to rules 6.01 and 6.05, the filing deadline for the motion for notice of review was January 11, 1995.[3] Because the Rupperts' motion was not filed until January 13, 1995, Schmidt contends their motion was untimely filed. We disagree.
In Thomas v. Fey, 405 N.W.2d 450 (Minn.App.1987), this court interpreted the same language in an identical statute that applies to Hennepin County Family Court. Id. at 453-54. In Thomas, this court held that *611 a party is deemed to have effective notice of a referee's recommended order under section 484.65, subd. 9 three working days after the date on which the order is actually mailed by a party or by the family court clerk.[4]
Id. at 454. Because the statute at issue has the identical language as the one at issue in Thomas, we conclude a party is deemed to have effective notice under Minn.Stat. § 484.70, subd. 7(d), three working days after the date on which the order is actually mailed by a party or by the family court clerk.
Although Thomas mentioned a Hennepin County Family Court local custom, both attorneys agreed that they think the issue should be decided on the statute and the rules as written. Because of the multiplicity of counties and judicial districts in this state, we agree the statute and rules as written are the logical starting point.
Here, the record shows the referee's recommended order was mailed on December 29, 1994. Notice of the referee's recommended order was effective three working days after its mailing, on January 4, 1995, as January 2 was a legal holiday. Then, counting ten days pursuant to rule 6.01, starting on January 5, the filing deadline was January 17, 1995, as January 16 was a legal holiday. The Rupperts filed their motion on January 13, 1995. Therefore, we find the trial court had jurisdiction to review the referee's recommended order.

2. Child Support
Modification of child support is within the trial court's discretion, and a reviewing court will reverse an abuse of that discretion only where it finds a clearly erroneous conclusion that is against logic and the facts on the record. Moylan v. Moylan, 384 N.W.2d 859, 864 (Minn.1986).
Upon a motion to modify a child support award, a court must first determine whether a change in circumstances justifies modification of the existing award. Minn.Stat. § 518.64, subd. 2(a) (1994). If modification is justified, the court should apply the statutory child support guidelines. Minn.Stat. § 518.64, subd. 2(b) (1994).
Where child support has been modified several times, this court looks to the last modification order to determine whether there has been a change in circumstances. Ricketson v. Ricketson, 402 N.W.2d 588, 590 (Minn.App.1987). Here, the February 3, 1993, order is the last modification order.
First of all, we note that at the time of the February 1993, order, Schmidt was earning a gross income of $541.66 per month and a net income of $447.22 per month. The trial court set Schmidt's child support obligation at $394 per month, which represented 88% of his net take-home pay! The only concession to an obviously unworkable award of child support was that $150 of the $394 be paid monthly and the other $244 per month accrue in arrearages, as set out in the February 1993, order.
We note that the trial court's reasoning at that time was questionable because the court concluded "the needs of the child cannot be postponed or deferred until the defendant has completed his education." While it is true as a general statement that "a child's needs cannot be postponed or deferred," that general statement runs into, and is superseded by, the specific proposition of law that in departing from the statutory guidelines, a trial court must consider the obligor's means along with the needs of the obligee. Minn.Stat. § 518.551, subd. 5(c), (i) (1994); Swick v. Swick, 467 N.W.2d 328, 332 (Minn.App.1991), review denied (Minn. May 16, 1991) (stating trial court must consider needs of child and needs and resources of each parent for any deviation from the guidelines). The reasonable needs of a child do not demand that the obligor pay for those needs when the obligor simply does not have the money. If a child with special needs can *612 show a need for $3,000 a month, and the obligor earns a net take-home pay of $1000 per month, there is little use in arguing a support obligation to fully meet those needs.
Yet, the February 1993 order listed all of A.S.R's needs and Rebecca's limited income because she wanted to go to college. At that time, the conceded child support guideline amount for Schmidt, based on his net earnings, was just $62.61 per month. Thus, the February 1993 order setting child support at $394 per month was a substantial upward departure; Schmidt was subject to about a 630% upward departure.
The rationale in the February 1993 order to support the huge upward departure (which was not appealed and is, therefore, the law of the case) is that it was the right thing for the child for each parent to continue with higher education, thereby legitimately limiting their ability to earn income. The trial court then took the child's needs of $788 per month and split them down the middle, $394 to each party. But that assessment, based on need, ignored legislation providing that an obligor is not voluntarily underemployed or unemployed if he goes to school. See Minn.Stat. § 518.551, subd. 5b(d) (1994).[5] There was absolutely no inference, much less a finding, that in 1993 Schmidt was voluntarily unemployed or underemployed. Rather the record shows that both parents were legitimately seeking higher education.
With this background we proceed to the issue before this court, namely, whether the trial court abused its discretion in reversing the referee's order modifying child support to $50 per month and reinstating the February 1993 order child support amount of $394 per month.
Schmidt argues the unexpected death of A.S.R.'s mother and the subsequent change of A.S.R.'s physical custody to Dianne Ruppert and legal custody to the Rupperts is a sufficient change in circumstances justifying modification of his child support obligation. We agree.
A child support order may be modified upon a showing of
(1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party or the child * * *; (3) receipt of assistance * * *; [or] (4) a change in the cost of living for either party * * *, any of which makes the terms [of the original order] unreasonable and unfair.
Minn.Stat. § 518.64, subd. 2(a). This court has held that a change in custody is a substantial change in circumstances that makes an original support order unreasonable and unfair. Buntje v. Buntje, 511 N.W.2d 479, 481 (Minn.App.1994); Gerardy v. Gerardy, 406 N.W.2d 10, 13 (Minn.App.1987); Landa v. Landa, 369 N.W.2d 330, 331 (Minn.App. 1985). Presumptively, a change in custody may change the needs of the relevant parties, including the needs of the child.
Here, on the facts in the record, there is a substantial change of circumstances by definition. The basis for the prior upward deviation from the guidelines no longer exists. The new custodians, the grandparents, do not go to college and, rather than having a limited income, the record shows that Dianne Ruppert is employed full-time as a secretary with the State of Minnesota. Thus, the entire basis upon which the February 1993 order requiring Schmidt to pay a 630% upward departure from the presumptive guidelines, that is, the custodial mother's limited income and her desire to go to college, vanished.
The downward modification found by the referee is fully supported by the record. Thus, we look to the statutory child support guidelines. Minn.Stat. § 518.551, subd. 5(i).[6] In his order, the referee found that Schmidt is still attending college full-time and has a net income of $363.31 per month. Under the *613 statutory guideline amounts, where an obligor has one child and a net monthly income of $550 or below, the trial court should set the child's support obligation on the ability of the obligor to provide support at his income level. Minn.Stat. § 518.551, subd. 5(b).
For a net income of $550 or below, it is not even presumed that an obligor pay as much as 16% of his net income (16% of $363 is $58), but rather child support is based only on an obligor's ability to pay.[7] Thus, the referee was faced with the following fact situation: Appellant had an existing child support obligation of $394 per month, net income of $363 a month, and a presumptive child support guideline amount of approximately $58 per month or less. These facts demanded relief.
The referee modified Schmidt's child support obligation to a guideline amount of $50 month, reserved arrearages accumulated through September 30, 1994, and ordered they not become due until Schmidt completed his education at the University of Minnesota. The referee then ordered that the accumulated child support payments held by the Ramsey County Child Support and Collections be paid immediately to Dianne Ruppert. That was a sound and reasonable solution.
We note that pursuant to Minn. R. Civ. P. 53.05(b) "the court shall accept the referee's findings of fact unless clearly erroneous." When the trial court reversed the referee's order, without analysis or support, it imputed to Schmidt a total net income of approximately $460 per month. The trial court theorized that Schmidt could work an extra five hours per week and bolster his net take-home by approximately $100 per month. We can only point out that the referee's findings that Schmidt was working 15 hours per week and was not voluntarily underemployed were not challenged. There is no support for the trial court's factual finding that Schmidt had imputed income of $460 per month. More importantly, there is no law to support the trial court's legal conclusion that if he was taking home $460 a month, he ought to make a child support payment of $394 per month. On take-home pay of $460 per month, presumptive child support is 16% or $74 a month or less.
The trial court's order reversing the referee's order contains no findings justifying the retention of a 630% upward departure. And there can be none. The reasons for that previous departure had simply disappeared.
Pursuant to Minn.Stat. § 518.551, subd. 5(i), if the trial court departs from the statutory guidelines, it must make specific written findings, including the amount of support calculated under the guidelines, justifying the departure. There are no specific findings on the needs of A.S.R. or the net income and expenses of Dianne Ruppert. But on this specific set of facts we do not remand. The record is clear Schmidt is a bona fide fulltime student in college[8] and has a net income of approximately $363 per month. There is nothing to revalue. Therefore, we hold that the trial court's order setting aside the referee's December 29, 1994, order is reversed, and the referee's conclusions of law and order for payment are reinstated.
The Rupperts are always free to make a motion for more child support if and when a substantial change in circumstances exists. The completion of Schmidt's college education may be such a change of circumstances. The referee properly ordered Schmidt to provide continuous and current information on his earnings and advancement toward a college degree.

DECISION
The trial court had jurisdiction to review the referee's order. The trial court abused its discretion in reversing the referee's order *614 and denying appellant relief. The trial court order is set aside; the referee's order is reinstated.
Affirmed in part and reversed in part.
NOTES
[1] Minn. R. Civ. P. 53.05(b) reads in relevant part:

In an action to be tried without a jury, the court shall accept the referee's findings of fact unless clearly erroneous. Within 10 days after being served with the notice of the filing of the report, any party may serve written objections thereto upon the parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in rule 6.04. After a hearing, the court may adopt the report, modify it, reject it in whole or in part, receive further evidence, or recommit it with instructions.
[2] Minn. R. Civ. P. 6.05 provides:

Whenever a party has the right or is required to act within a prescribed period after the service of a notice or other paper upon the party * * * and the notice or paper is served by mail, three days shall be added to the prescribed period.
[3] Schmidt argues the Rupperts had a total of 13 days to file a timely motion, ten days pursuant to the statutorily prescribed period and three days pursuant to rule 6.05 for mailing. Accordingly, starting the computation on December 30, 1994, as the referee's order was mailed out on December 29, the notice of review was due by Wednesday, January 11, 1995.
[4] The statute construed in Thomas is identical to the current statute, which provides in relevant part:

Review of any recommended order or finding of a referee by the district court judge may be had by notice served and filed within ten days of effective notice of such recommended order or finding.
Minn. Stat. § 484.65, subd. 9 (1994).
[5] Minn.Stat. § 518.551, subd. 5b(d), provides:

A parent is not considered voluntarily unemployed or underemployed upon a showing by the parent that the unemployment or underemployment: (1) is temporary and will ultimately lead to an increase in income; or (2) represents a bona fide career change that outweighs the adverse effect of that parent's diminished income on the child.
[6] Minn.Stat. § 518.551, subd. 5(i), provides "[t]he guidelines * * * are a rebuttable presumption and shall be used in all cases when establishing or modifying child support."
[7] Where an obligor has one child and a net monthly income between $551 and $600 per month, support obligation should be set at 16% of his income. Minn.Stat. § 518.551, subd. 5(b).
[8] We note in passing that Rupperts' counsel argued that child support should remain at $394 per month because Schmidt's stepfather was contributing towards Schmidt's college education. We can only observe that we are not surprised. At a time when Schmidt's net income was $363 per month and he was under court order to pay $394 per month, consisting of $150 per month actually paid, and $244 per month accruing in arrearages, it would have been impossible for him to go to college had not some friend or relative stepped forward gratuitously with help.