In re Paul Daniel PUTZ, n/k/a Paul Ben–Yehuda, Respondent,

v.

Jamile Therese PUTZ, Respondent Below,

COUNTY OF BENTON, Petitioner, Appellant.

No. C7–01–527.

Supreme Court of Minnesota.

June 13, 2002.

Robert J. Raupp, Benton County Attorney, Robert B. Anderson, Asst. Benton County Attorney, Foley, MN, for Appellant.

Lynne M. Ridgway, Hall & Byers, P.A., St. Cloud, MN, for Respondent.

## OPINION

LANCASTER, Justice.

This is an appeal by Benton County from a court of appeals' decision affirming a child support magistrate's order that reduced Paul Ben–Yehuda's monthly child support obligation from $400 to $50. Ben–Yehuda sought the downward modification after voluntarily terminating his full-time employment and enrolling full time as an undergraduate student at Saint Cloud State University. We reverse and remand.

### I.

Paul Ben–Yehuda—formerly known as Paul Putz—and Jamile Putz were married in 1992. In September 1994, Ben–Yehuda and Putz had their only child: Rita Marie Putz.[1] Ben–Yehuda and Putz separated in July 1999, and their marriage was dissolved on October 13, 1999.

At the time of the dissolution, Ben–Yehuda was employed as a supervisor of distribution operations by the United States Postal Service (USPS), and had gross earnings of approximately $40,000 per year. Putz worked full time at the Adult and Pediatric Urology Clinic in Saint Cloud, Minnesota, and earned a gross hourly wage of $9.50.

Ben–Yehuda and Putz reached an agreement with respect to custody, child support, and all other issues related to the dissolution, and on October 13, 1999, the district court issued stipulated findings of fact, conclusions of law, an order for judgment, and a judgment and decree (1999 Order) reflecting the parties' agreement. Under the 1999 Order, the parties were awarded joint legal custody of Rita Marie and Putz was awarded sole physical custody. The 1999 Order required Ben–Yehuda to pay Putz $400 per month beginning September 1, 1999, for child support. In addition, it required Ben–Yehuda to pay 50% of Putz's child care expenses, 50% of Rita Marie's uninsured medical, dental, orthodontic, optical, and mental health care expenses, and 50% of Rita Marie's health and dental insurance costs not covered by either of the parties' employers.

Ben–Yehuda's support obligation of $400 per month was a downward departure from the child support guidelines found in Minn.Stat. § 518.551, subd. 5(b) (Supp. 1999).[2] The district court noted three reasons for the parties' agreement to deviate from the guidelines. First, under the parties' physical custody arrangement, Rita Marie was to spend approximately three months per year with Ben–Yehuda. Second, Putz was capable of earning an income. Third, at the time of the dissolution, Ben–Yehuda was planning to move out of the United States to take a lower-paying job.

Ben–Yehuda did not move out of the country, nor did he take a lower-paying job. Instead, he remarried on November

---

1. For ease of reference, Paul Ben–Yehuda will be referred to throughout this opinion as Ben–Yehuda, Jamile Putz as Putz, and Rita Marie Putz as Rita Marie.

2. Under the guidelines, a monthly support obligation of $400 is appropriate when the obligor's monthly net income is $1,600. Minn.Stat. § 518.551, subd. 5(b). Although the 1999 Order does not include a finding regarding Ben–Yehuda's monthly net income, it does indicate that his monthly gross income from his employment with the USPS was approximately $3,333, and that Ben–Yehuda's support obligation was less than the amount called for by the guidelines.

24, 1999—six weeks after the district court issued the 1999 Order—and continued to live in Saint Cloud. He also continued to work as a supervisor with the USPS until July 1, 2000, at which time he voluntarily terminated his employment and enrolled as a full-time student at Saint Cloud State University (St. Cloud State).

In October 2000, Benton County intervened in the case as provided for by Minn. Stat. § 518.551, subd. 9(b) (2000).[3] In November 2000, the county made a motion to modify the 1999 Order. In its proposed order modifying child support (Proposed Order), the county requested an increase in Ben–Yehuda's monthly support obligation from $400 to $543. The county arrived at the requested amount by applying the child support guidelines to the monthly net income Ben–Yehuda earned at the USPS. The Proposed Order also requested that Ben–Yehuda pay $186.86 per month for medical support, $107.42 per month for child care expenses, and $108.60 per month toward the $5,320.76 in arrears Ben–Yehuda incurred between September 1, 1999, and October 31, 2000.

In January 2001, Ben–Yehuda made a countermotion to "terminate" his child support and health insurance obligations during his attendance at St. Cloud State. In an affidavit attached to his motion, Ben–Yehuda stated that his only income was a small amount he received as a military veteran[4] and that he was relying on his wife to support him while he was in school. He also stated that he was in class approximately 20 hours per week, studied outside of class approximately 40 hours per week, and expected to earn a degree in computer science in four years. With respect to his future earnings, Ben–Yehuda stated:

> At that time [when I receive my degree], my ability to earn an income will be substantially higher in this field of employment than it is with the United States Postal Service, or any other place of employment without a college degree. I anticipate that I will be earning, at a minimum, $70,000 when I have completed my studies.

A child support magistrate held a hearing on the parties' motions, and in January 2001, the magistrate issued findings of fact, conclusions of law, an order modifying support, and an order for judgment (2001 Modified Order). The magistrate found that Ben–Yehuda received $460 per month from the GI bill and that his unemployment was "temporary and * * * designed to lead to an increase in income." The magistrate also found that, excluding child care expenses, Putz's monthly expenses for herself and Rita Marie were $1,970. Excluding public assistance benefits, Putz's net monthly income was $1,302.

Based on these findings, the magistrate concluded that there had been a substantial change in circumstances that rendered the 1999 Order unreasonable and unfair. Applying the guidelines to Ben–Yehuda's monthly net income, the magistrate concluded that he had the ability to pay $50 per month for child support. The magistrate found that the $50 support award was not a deviation from the guidelines. In addition, the 2001 Modified Order reduced Ben–Yehuda's contribution to Putz's child care expenses to zero, reserved the issue of medical and dental support "until further order," entered a judgment against

**3.** Section 518.551, subd. 9(b), allows counties to intervene in child support cases if the support obligee receives public assistance benefits. Putz receives child care assistance and MinnesotaCare benefits.

**4.** Ben–Yehuda served in the United States Marine Corps from 1986 to 1992.

Ben–Yehuda establishing his arrears through October 31, 2000, as $5,321.16, and directed Ben–Yehuda to notify Putz in writing of any change in his education or employment status.

The county appealed the magistrate's 2001 Modified Order to the court of appeals,[5] arguing that the magistrate erred by (1) finding that Ben–Yehuda was not voluntarily unemployed; (2) finding that Ben–Yehuda's return to school constituted a substantial change in circumstances; (3) finding that Ben–Yehuda's modified support obligation was not a deviation from the child support guidelines; and (4) setting Ben–Yehuda's support obligation without considering the contribution he received from his spouse and others.

The court of appeals, relying on *In re Custody of A.S.R.*, 539 N.W.2d 607, 612 (Minn.App.1995), for the proposition that an obligor is generally not considered voluntarily unemployed while attending school, held that the magistrate acted within his discretion in concluding that Ben–Yehuda was not voluntarily unemployed. Addressing the county's second argument, the court of appeals held that the magistrate did not abuse his discretion by concluding that the reduction in Ben–Yehuda's net monthly income resulted in a substantial change in circumstances. The court of appeals based its holding on Minn. Stat. § 518.64, subd. 2(b) (2000), which creates a presumption of a substantial change in circumstances when "the application of the child support guidelines * * * to the current circumstances of the parties results in a calculated court order that is at least 20 percent and at least $50 per

month * * * lower than the current support order."

With respect to the county's third argument, the court of appeals observed that, when an obligor's net monthly income is $550 or less, the obligor's support obligation is based on the obligor's ability to pay. Thus, the court of appeals concluded that the magistrate's award of $50 per month was not a deviation from the guidelines. Finally, the court of appeals concluded that the magistrate did not err by failing to include contributions from Ben–Yehuda's spouse and others in its calculation of Ben–Yehuda's income. After noting that the county had not raised this issue before the magistrate, the court of appeals rejected the county's argument on the ground that the record did not contain any information concerning the alleged contributions.

## II.

We have repeatedly stated that the district court enjoys broad discretion in ordering modifications to child support orders. *Gully v. Gully*, 599 N.W.2d 814, 820 (Minn.1999); *Moylan v. Moylan*, 384 N.W.2d 859, 864 (Minn.1986). However, the district court's discretion must be exercised within the limits set by the legislature. *Moylan*, 384 N.W.2d at 864. We will reverse a district court's order regarding child support only if we are convinced that the district court abused its broad discretion by reaching a clearly erroneous conclusion that is against logic and the facts on record. *Gully*, 599 N.W.2d at 820; *Moylan*, 384 N.W.2d at 864. The court of appeals in this case stated that the abuse of discretion standard also applies to or-

**5.** Under the Interim Expedited Child Process Rules in effect when the 2001 Modified Order was issued, a party aggrieved by a final order or judgment of a child support magistrate could either file a motion for review with the district court or the child support magistrate or appeal directly to the court of appeals. Minn. Int. Exped. Child P.R. 22.01, 24.01. In this case, the county appealed the 2001 Modified Order directly to the court of appeals.

ders issued by child support magistrates. *Putz v. County of Benton,* No. C7–01–527, 2001 WL 950088, at *1 (Minn.App. Aug.21, 2001); *see also Brazinsky v. Brazinsky,* 610 N.W.2d 707, 710 (Minn.App.2000) (stating that "when reviewing a child support magistrate's order in an expedited child support process proceeding, [the court of appeals] will apply the same standard of review that [it] would apply to the order if it had been issued by a district court"). While we have never addressed the question, the court of appeals applied the abuse of discretion standard and the parties agree that it is the appropriate standard of review.

A support order can be modified if a party experiences a substantial increase or decrease in earnings that makes the terms of the existing support order unreasonable and unfair. Minn.Stat. § 518.64, subd. 2(a)(1) (2000). When considering a motion for the modification of a support order, child support magistrates must apply Minn.Stat. § 518.551, subd. 5. Minn.Stat. § 518.64, subd. 2(c)(1). Under the child support guidelines found in section 518.551, subd. 5(b), an obligor's support obligation is calculated as a percentage of his or her monthly net income. The guideline percentages range from 16% to 50%, and the percentage applicable in any given case depends on the obligor's monthly net income and the number of children to be supported. *Id.* If the obligor's monthly net income is $550 or less, the support obligation is calculated "based on the ability of the obligor to provide support at these income levels, or at higher levels, if the obligor has the earning ability." *Id.* There is a rebuttable presumption that the support obligation calculated under the guidelines is correct. *Id.,* subd. 5(i).

When, as here, a party seeks the modification of a support order on the basis of a change in the obligor's earnings, the support obligation calculated under the guidelines helps a magistrate ascertain whether a modification is warranted. If the application of the guidelines to the obligor's current circumstances results in a calculation that is at least 20% and at least $50 per month higher or lower than the obligor's existing support obligation, it is presumed that there has been a substantial change in circumstances and the terms of the existing support order are rebuttably presumed to be unreasonable and unfair. Minn.Stat. § 518.64, subd. 2(b)(1).

Given the importance of the guidelines in child support modification cases, it is essential that magistrates carefully examine the evidence presented by the parties and make thorough and accurate findings of fact regarding the obligor's monthly net income. Ordinarily, an obligor's monthly net income is equal to his or her actual monthly gross income minus the deductions specified in section 518.551, subd. 5(b). If, however, a magistrate finds that an obligor is "voluntarily unemployed or underemployed," then the magistrate must calculate the support obligation "based on a determination of [the obligor's] imputed income." Minn.Stat. § 518.551, subd. 5b(d) (2000). "Imputed income" is defined as "the estimated earning ability of a parent based on the parent's prior earnings history, education, and job skills, and on availability of jobs within the community for an individual with the parent's qualifications." *Id.* Section 518.551, subd. 5b(d), also states:

A parent is not considered voluntarily unemployed or underemployed upon a showing by the parent that the unemployment or underemployment: (1) is temporary and will ultimately lead to an increase in income; or (2) represents a bona fide career change that outweighs the adverse effect of that parent's diminished income on the child.

In this case, both the court of appeals and the magistrate appear to have proceeded under the belief that an obligor who voluntarily terminates employment and returns to school is automatically considered not to be voluntarily unemployed under the statute. In its decision affirming the magistrate's 2001 Modified Order, the court of appeals relied heavily on its earlier decision in A.S.R., citing it for the proposition that "[a]n obligor generally is not considered voluntarily unemployed or underemployed while the obligor is attending school." *Putz*, 2001 WL 950088, at *2. At the child support modification hearing, A.S.R. was the only case cited by Ben-Yehuda in support of his position that he was not voluntarily unemployed. At the conclusion of counsel's argument, the magistrate stated:

> [T]hese are difficult cases when someone goes to school, particularly when you have an Order in place that is helpful, and then all of a sudden that gets changed, you don't participate in the decision. In the cases that I've handled in past years, if I try to have the support continued, even if the child is in the late teens, I've been reversed by the Court of Appeals. So it puts you in a very difficult spot. *And I think the options that I can utilize to help you [Putz] are very limited here pursuant to what the case law is. And [Ben–Yehuda] has certainly cited the pertinent cases on that.*

(Emphasis added.)

In A.S.R., a dispute over child support arose when custody of the child was transferred from the child's mother, who had been murdered, to the child's maternal grandparents. 539 N.W.2d at 608. The obligor had terminated his full-time employment and enrolled at the University of Minnesota as a full-time student. Id. at 609. A family court referee reduced the obligor's monthly support obligation from $394 to $50. *Id.* The district court reversed the referee's order on the ground that the obligor failed to show a substantial change in circumstances. *Id.* at 610. The court of appeals reversed and reinstated the referee's order. *Id.* at 613–14. In its discussion of the background of the case, the court of appeals noted the existence of "legislation providing that an obligor is not voluntarily underemployed or unemployed if he goes to school. *See* Minn.Stat. § 518.551, subd. 5b(d) (1994)." A.S.R., 539 N.W.2d at 612.

We did not review the court of appeals' decision in A.S.R. Indeed, we have never considered whether an obligor who voluntary stops working and returns to school qualifies as voluntarily unemployed under section 518.551, subd. 5b(d). That section does not specifically address the question. Thus, although an obligor who returns to school is, we conclude, free to argue that he or she is not voluntarily unemployed, such a finding is warranted only if the obligor shows that the unemployment "(1) is temporary and will ultimately lead to an increase in income; or (2) represents a bona fide career change that outweighs the adverse effect of that parent's diminished income on the child." *Id.*

Citing case law from the court of appeals, the county argues that, in addition to the two conditions enumerated in section 518.551, subd. 5b(d), the court should also consider whether the obligor unjustifiably self-limited his or her income in bad faith regarding the support obligation. In response, Ben–Yehuda notes that the case law cited by the county predates the enactment of section 518.551, subd. 5b(d), and argues that cases decided before the statute went into effect are no longer applicable. Furthermore, Ben–Yehuda argues that the county waived this issue by failing

to raise it before the magistrate at the child support modification hearing.

██ Generally, issues not raised below will not be considered on appeal. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 673 (Minn.2001) (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988)). "This is not, however, an ironclad rule." *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 403 (Minn.2000). This court has the authority to take any action "as the interest of justice may require." Minn. R. Civ. App. P. 103.04. In this case, neither Putz nor the county was represented by counsel at the child support modification hearing.[6] In light of the fact that the state's interest in protecting the well-being of children is at stake, we conclude that justice requires us to consider the issue raised by the county even though it was not raised below. *See Gully*, 599 N.W.2d at 823 ("In cases involving child support obligations, the court plays a unique role in that it sits as a third party, representing all of the citizens of the state of Minnesota to see that children benefit from the income of their parents.").

The legislature enacted what is now section 518.551, subd. 5b(d), in 1991.[7] Act of June 4, 1991, ch. 292, art. 5, § 76, 1991 Minn. Laws 1653, 1902. Prior to that time, Minnesota's child support statutes did not expressly provide for the imputation of income to an unemployed or underemployed obligor. Our holding in *Giesner v. Giesner*, 319 N.W.2d 718 (Minn.1982), filled in this statutory gap. In *Giesner*, the obligor was involuntarily terminated from his employment and, after attempting unsuccessfully to obtain employment in his field, chose to start a new business. *Id.* at

719. The obligor then moved to suspend his support obligation for a period of 8 to 12 months. *Id.* A referee denied the obligor's motion and the trial court affirmed the referee's decision. *Id.* We reversed and remanded for further findings on the issue of the obligor's subjective intent in starting the new business. *Id.* at 720. We noted that, in cases involving an obligor's ability to comply with a support order for contempt purposes, "there is no defense if the party directed to pay 'has not made a reasonable effort by means of his own selection to conform to an order well within his inherent but unexercised capacities.'" *Id.* at 719–20 (citations omitted). We stated that "a similar test should apply where an individual seeks modification of a decree on the ground that a career change has resulted in decreased earnings." *Id.* at 720. We went on to explain:

> If the change was made in good faith, the child and the separated spouse should share in the hardship as they would have had the family remained together. The same is true as to benefits. * * * If the trial court finds that the [obligor's] entry into the new business * * * was made in good faith so that [the obligor] might meet his obligations, * * * the court may then fashion a modification that will reflect equities for the parties and the child.

*Id.* (citation omitted).

Following *Giesner*, a number of court of appeals decisions held that an obligor's earning capacity could be used as a measure of income if the obligor's actual income was "unjustifiably self-limited"—that is, if the obligor self-limited his or her income in bad faith. *See, e.g., Schneider v.*

---

**6.** Putz appeared at the hearing pro se and a child support officer appeared on behalf of the county.

**7.** Subdivision 5b(d) was originally codified at Minn.Stat. § 518.551, subd. 5b(c), but was later amended and recodified at Minn.Stat. § 518.551, subd. 5b(d). Act of May 24, 1993, ch. 340, § 34, 1993 Minn. Laws 2251, 2272.

*Schneider,* 473 N.W.2d 329, 332 (Minn. App.1991); *Anderson v. Anderson,* 450 N.W.2d 384, 386 (Minn.App.1990); *Curtis v. Curtis,* 442 N.W.2d 173, 177–78 (Minn. App.1989); *Rohrman v. Moore,* 423 N.W.2d 717, 720–21 (Minn.App.1988); *Hedburg v. Hedburg,* 412 N.W.2d 43, 47 (Minn.App.1987); *Goff v. Goff,* 388 N.W.2d 28, 30 (Minn.App.1986); *Juelfs v. Juelfs,* 359 N.W.2d 667, 670 (Minn.App.1984), *rev. denied* (Minn. Mar. 29, 1985).

■ Ben–Yehuda contends that the case law allowing courts to impute income to an obligor who unjustifiably self-limits his or her income in bad faith was superseded by section 518.551, subd. 5b(d). In *Holmberg v. Holmberg,* 588 N.W.2d 720 (Minn.1999), we stated that the jurisdiction of the courts in cases involving child support is equitable in origin and the courts' authority to craft remedies in such cases is an outgrowth of inherent equitable powers. *Id.* at 724–26. In deciding whether section 518.551, subd. 5b(d), limits the power of the courts to take an obligor's bad faith into account, we are guided by the rule that statutes are not to be construed in derogation of well-established principles of the common law or equity unless such a construction is required by the express words of the statute or by necessary implication. *Swogger v. Taylor,* 243 Minn. 458, 465, 68 N.W.2d 376, 382 (1955); *see also Ly v. Nystrom,* 615 N.W.2d 302, 314 (Minn.2000) (stating that we have "long presumed that statutes are consistent with the common law").

■ The language of section 518.551, subd. 5b(d), does not expressly prohibit courts from considering whether an obligor's unemployment or underemployment is in bad faith. Nor does the statute necessarily imply such a prohibition. On the contrary, the statute gives rise to the opposite implication. Under section 518.551, subd. 5b(d), there are only two situations in which an obligor who chooses to terminate or scale back employment is not voluntarily unemployed or underemployed. In all other situations, including those in which the obligor unjustifiably self-limits his or her income in bad faith, the obligor is voluntarily unemployed or underemployed and the court must calculate the support obligation on the basis of imputed income. *See id.* We therefore hold that section 518.551, subd. 5b(d), does not limit the power of the courts to consider whether an obligor's unemployment or underemployment is in bad faith toward his or her support obligation.

In addition to determining the obligor's monthly net income and applying the guidelines, a magistrate ruling on a motion for the modification of a support order must also consider the six factors enumerated in section 518.551, subd. 5(c). The six factors are:

(1) all earnings, income, and resources of the parents, including real and personal property, but excluding income from excess employment of the obligor or obligee that meets [certain statutory criteria];

(2) the financial needs and resources, physical and emotional condition, and educational needs of the child or children to be supported;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved, but recognizing that the parents now have separate households;

(4) which parent receives the income taxation dependency exemption and what financial benefit the parent receives from it;

(5) the parents' debts [if they meet specified statutory criteria]; and

(6) the obligor's receipt of public assistance under the AFDC program[.]

*Id.*

### III.

The main point of contention between the parties at the child support modification hearing was whether Ben–Yehuda was "voluntarily unemployed" under section 518.551, subd. 5b(d). The magistrate's findings of fact on this issue were limited to the following:

7. The Obligor [Ben–Yehuda] is not employed.

8. Obligor is a full-time student. This is temporary and is designed to lead to an increase in income. He receives $460 per month from the GI bill.

These findings were significant because they allowed the magistrate to use Ben–Yehuda's *actual* income, rather than his *imputed* income, as the basis for calculating his support obligation under the guidelines. This calculation, in turn, served as the foundation for the magistrate's conclusion that Ben–Yehuda experienced a substantial decrease in earnings that rendered the terms of the 1999 Order unreasonable and unfair.

▮▮▮ The primary issue presented on this appeal is whether the magistrate erred in finding that Ben–Yehuda was not voluntarily unemployed. In reviewing this issue, we are mindful of the "strong state policy of assuring that children have the adequate and timely economic support of their parents." *Schaefer v. Weber*, 567 N.W.2d 29, 33 (Minn.1997). Imputing income to a voluntarily-unemployed obligor furthers the state's interest because it prevents parents who choose to limit their income from escaping their duty to support their children.

▮▮▮ After reviewing the record, we are convinced that the magistrate abused his discretion by making a clearly erroneous conclusion that is against logic and the facts on record. See *Gully*, 599 N.W.2d at 820; *Moylan*, 384 N.W.2d at 864. The record reveals that Ben–Yehuda was earning a gross annual income of $40,000 when he voluntarily terminated his employment with the USPS. He now seeks to have his support obligation reduced to just $50 per month until he graduates some three and one-half to four years in the future, a period of time encompassing approximately 20% of Rita Marie's childhood years. It is highly likely that Rita Marie's needs will go unmet during this period. Putz's monthly expenses for herself and Rita Marie exceed her net monthly income by more than $600. The magistrate's 2001 Modified Order leaves Putz, who is already working full time, with little choice but to apply for increased levels of public assistance as a means of supporting Rita Marie. Thus, the 2001 Modified Order shifts the responsibility of supporting Rita Marie from Ben–Yehuda, who is fully capable of earning an income and supporting his child, to the taxpayers of the state. However, in *County of Nicollet v. Larson*, 421 N.W.2d 717 (Minn.1988), we stated:

There can be no doubt that 'the primary obligation of support of a child should fall on the parent and the County should only be expected to contribute to the extent that the parent is unable.' There can be no other rule since the parent has the primary responsibility to support the child.

*Id.* at 720 (quoting *County of Anoka v. Richards*, 345 N.W.2d 263, 267 (Minn.App. 1984)).[8] Based on these considerations, we

---

**8.** While we are concerned that the 2001 Modified Order may shift Ben–Yehuda's support

obligation to the taxpayers, we would be no less concerned by an obligor who attempted

conclude that the magistrate abused his discretion by deciding that Ben–Yehuda's unemployment was temporary. Because Ben–Yehuda failed to sustain his burden on this point, we hold that he is voluntarily unemployed under section 518.551, subd. 5b(d).

Under section 518.551, subd. 5b(d), Ben–Yehuda also had the burden of establishing that his unemployment would ultimately lead to an increase in income. With respect to this second element, we note that the magistrate's finding that the unemployment was "designed to" lead to an increase in income does not correspond with the requirements of section 518.551, subd. 5b(d), which call for the obligor to show that the unemployment "will" lead to such an increase. In determining whether an obligor has sustained this burden, the certainty of the future increase in income is an important consideration. In this case, the record is silent as to the availability of jobs within Ben–Yehuda's field of study and there is no objective evidence indicating that those who find employment in the field earn more than $40,000 per year. Indeed, the only evidence presented on this issue is Ben–Yehuda's bare assertion that he anticipates earning at least $70,000 per year after graduation. On the record before us, we conclude that Ben–Yehuda's assessment of his future earnings is entirely speculative.

In any event, Ben–Yehuda has demonstrated an unwillingness to perform his support obligation from the start, amassing a $5,321.16 arrearage in just over one year under the 1999 Order. The fact that Ben–Yehuda failed to provide support while he was still working for the USPS and his support obligation was set below the amount called for by the guidelines suggests that Rita Marie will not benefit

even if Ben–Yehuda's income were to increase.

In sum, the evidence in the record demonstrates that this is precisely the type of situation in which it is appropriate to impute income to an obligor under section 518.551, subd. 5b(d). We therefore conclude that the magistrate abused his broad discretion by reaching a clearly erroneous conclusion that is against logic and the facts on record. *See Gully,* 599 N.W.2d at 820; *Moylan,* 384 N.W.2d at 864. Our holding in this case, while based on the relatively long duration of Ben–Yehuda's unemployment, is also supported by the speculative nature of a future increase in Ben–Yehuda's income and the possibility that Rita Marie's needs will go unmet during the period of unemployment.

In addition, it is unclear whether the magistrate took into account the factors set forth in section 518.551, subd. 5(c). Specifically, we are unable to discern from our review of the magistrate's 2001 Modified Order whether he considered "the financial needs and resources, physical and emotional condition, and educational needs of" Rita Marie as required by section 518.551, subd. 5(c)(2); "the standard of living [Rita Marie] would have enjoyed had the marriage not been dissolved" as required by section 518.551, subd. 5(c)(3); "which parent receives the income taxation dependency exemption and what financial benefit the parent receives from it" as required by section 518.551, subd. 5(c)(4); and Putz's and Ben–Yehuda's debts as provided in section 518.551, subd. 5(c)(5).

As we stated in *Erickson v. Erickson,* 385 N.W.2d 301 (Minn.1986), "[w]e cannot stress enough the importance of having findings of fact that demonstrate the trial court actually did take all relevant factors into consideration." *Id.* at 303. Because

to shift his or her burden of support to an obligee.

of the inadequacy of the magistrate's findings, we must remand the case for reconsideration. On remand, any modification of Ben–Yehuda's support obligation must be based on his imputed income as defined in section 518.551, subd. 5b(d). After applying the guidelines to Ben–Yehuda's imputed income, the magistrate must consider the six factors enumerated in section 518.551, subd. 5(c), before determining the final amount of Ben–Yehuda's support obligation.

Reversed and remanded.

PAGE, J., concurring specially.

### SPECIAL CONCURRENCE

PAGE, Justice (concurring specially).

I agree with the majority's conclusion that Paul Ben–Yehuda is voluntarily unemployed under Minn.Stat. § 518.551, subd. 5b(d) (2000). I write separately, however, to express my concern that the majority's holding may be interpreted as creating an absolute rule that unduly limits the ability of child support obligors to improve their condition, in both an economic and an intellectual sense, by going to school full time to obtain an undergraduate education. Without an education, obligors may find themselves trapped indefinitely in an employment situation that deprives them of the chance to realize their full potential. While I recognize the importance of ensuring that parents provide financial support for their children, I do not believe that this objective requires us to deny an entire class of individuals the opportunity to improve their education.

I believe that the answer to the question of whether a child support obligor who attends school full time is voluntarily unemployed should be based on the particular facts and circumstances of each case. In this case, there are a number of factors that, when taken in combination with the relatively long duration of Ben–Yehuda's unemployment, lead me to the conclusion that his support obligation should be calculated based on his imputed income. First, there is the fact that Ben–Yehuda's original child support obligation was set at a reduced level based on his representation to the district court that he would soon be leaving the country to take a job that paid less than what he was earning at the United States Postal Service (USPS). This career change never materialized and, as a result, Ben–Yehuda did not experience a decrease in earnings.

Second, even though Ben–Yehuda's monthly support obligation was set at an amount less than that called for by the child support guidelines, he still failed to make the monthly child support payments required by the district court's order. In my view, these facts strongly suggest that Ben–Yehuda's current unemployment may be nothing more than an effort to avoid his child support obligation.

The third factor that influences my decision in this case is the lack of evidence on the issue of whether Ben–Yehuda's undergraduate degree in computer science will lead to an increase in his income. The only evidence in the record on this point is Ben–Yehuda's own statement in an affidavit. Standing alone, I believe that this evidence would not support a finding that Ben–Yehuda's unemployment will ultimately lead to an increase in his income.

In sum, given the importance of education, I reject the notion that a child support obligor who stops working to obtain additional education is automatically voluntarily unemployed under section 518.551, subd. 5b(d).