*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0617**

In re the Marriage of: Kenneth M. Kuller, petitioner,
Appellant,

vs.

Elizabeth L. Kuller,
Respondent.

**Filed December 7, 2015**
**Affirmed in part, reversed in part, and remanded**
**Stauber, Judge**

Hennepin County District Court
File No. 27FA000301061

Kenneth M. Kuller, Minneapolis, Minnesota (pro se appellant)

Elizabeth L. Kuller, n/k/a Elizabeth A. Larson, Edina, Minnesota (pro se respondent)

Michael O. Freeman, Hennepin County Attorney, Rachelle R. Drakeford, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County)

Considered and decided by Stauber, Presiding Judge; Smith, Judge; and Minge, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STAUBER**, Judge

On appeal from an order determining the amount appellant-obligor is owed by respondent-county due to his overpayment of child support, appellant argues that (1) the child support magistrate's (CSM) finding on the amount of the child support overpayment is clearly erroneous because it included pre-judgment arrears; (2) the CSM made insufficient findings, which demonstrate that he failed to consider all of the evidence; (3) the CSM erred by failing to include the amount of voided checks issued by the county in the total amount of what appellant is owed by the county; and (4) the CSM's finding that appellant paid $371.44 in unreimbursed medical expenses is clearly erroneous. We affirm in part, reverse in part, and remand.

## FACTS

In 2007, the marriage of pro se appellant Kenneth Kuller (Kuller) and respondent Elizabeth Kuller, n/k/a Elizabeth Larson (Larson), was dissolved. The parties were awarded joint legal custody of their two minor children, with physical custody awarded to Larson. Kuller was ordered to pay child support in the amount of $890.40 per month.

In December 2014, Kuller moved to determine the amount of his child support overpayments. A hearing was held before the CSM on February 2, 2015, to "determine what, if any, sums remain due to [Kuller] and to solidify a process by which he will be reimbursed." By order dated February 22, 2015, the CSM found that since the entry of the judgment and decree, "[t]here has been an extraordinary amount of litigation . . . resulting in numerous court orders regarding child support," and that "[t]he number and

nature of the many support orders have resulted in confusion regarding [Kuller's] actual obligations." The CSM also found that Kuller has exacerbated the confusion by personally making occasional support payments to a payment center while income withholding also was in place. The CSM then engaged in a detailed analysis to determine what amounts, if any, appellant is owed. The CSM found that Kuller's "total basic and medical support obligations" paid through December 31, 2014 were $87,936.32, and that respondent Hennepin County (county) has received payments and credits through December 31, 2014 totaling $97,137.72. Thus, the CSM found that Kuller's payments exceeded his obligations by $9,201.40. The CSM then found that the county "has issued a large number of checks to [Kuller] for reimbursement of child support overpayment," and that Kuller "has cashed checks totaling $8,528.28." Therefore, the CSM concluded that Kuller's "total overpayment of child support . . . through December 31, 2014 is $9,201.40 - $8,528.28 = $673.12." Finally, the CSM noted that the county "has issued a number of additional refund checks to [Kuller] which have not been cashed. Some of those checks have been voided and some are still outstanding. . . . At the hearing, the magistrate ordered the [c]ounty to void all uncashed checks."

Kuller moved "for review of the findings of fact, conclusions of law and order dated February 22, 2015." The CSM denied the motion. This appeal followed.

## DECISION

"When a district court affirms a CSM's ruling the CSM's ruling becomes the ruling of the district court, and we review the CSM's decision to the extent it is affirmed by the district court, as if it were made by the district court." *Welsh v. Welsh*, 775

3

N.W.2d 364, 366 (Minn. App. 2009). We review "the district court's decision confirming the CSM's order under an abuse-of-discretion standard." *Davis v. Davis*, 631 N.W.2d 822, 826 (Minn. App. 2001). A district court's order regarding child support will be reversed if the district court abused its discretion by resolving the matter in a manner "that is against logic and the facts on record." *Putz v. Putz*, 645 N.W.2d 343, 347 (Minn. 2002).

## I.    Pre-decree arrears

Kuller initially contends that the CSM's determination of the amount of Kuller's overpayment of child support is clearly erroneous because the conclusion considers his pre-judgment arrears. To support his claim, Kuller cites Minn. Stat. § 518.131, subd. 5 (2014), which states: "A temporary order shall continue in full force and effect until the earlier of its amendment or vacation, dismissal of the main action or entry of a final decree of dissolution or legal separation." Relying on section 518.131, subdivision 5, Kuller argues that because the judgment and decree "did not include any provisions to preserve" his $3,415 in pre-decree child-support arrears, the temporary child-support order "merged into the decree, and the arrearage [that the temporary order] created expired along with the temporary order that created it."

Kuller's reliance on Minn. Stat. § 518.131, subd. 5, is misplaced. Section 518.131, subdivision 5, provides that a temporary child-support order remains in place until the judgment and decree is entered, at which time the child-support obligation set forth in the judgment and decree becomes effective, replacing the child-support obligation set forth in the temporary order. But Minn. Stat. § 518.131, subd. 5, does not

4

void an obligor's child-support arrears. "Arrears" are amounts ordered in a "support order" but not paid. Minn. Stat. § 518A.26, subd. 3 (2014). A "support order" includes a temporary order. Minn. Stat. § 518A.26, subd. 21(a) (2014). Therefore, failure to make the payments required by a temporary order can generate "arrears," and the question becomes whether any arrears from the temporary order merged into the judgment.

Here, Kuller was obligated to pay the child support in the temporary child-support orders. Kuller failed to pay at least some of the amount ordered; as a result, Kuller owed Larson several thousand dollars in arrears at the time of the judgment and decree. Although the amended judgment and decree does not specifically contemplate Kuller's arrears, it is clear from the procedural posture of the case, and the ongoing litigation involving Kuller's arrears, that the district court did not intend the arrears from the temporary order to merge into the judgment. Accordingly, the CSM properly considered pre-judgment arrears in determining the amount of Kuller's overpayment of child support.

## II. Findings related to evidence submitted by Kuller

"It is settled that on appeal, the court views the evidence in the light most favorable to the prevailing party." *Lesmeister v. Dilly*, 330 N.W.2d 95, 100 (Minn. 1983). The appellant has the burden to show that factual findings are clearly erroneous. *Leininger v. Anderson*, 255 N.W.2d 22, 26-27 (Minn. 1977).

Kuller asserts that the evidence he presented at the hearing included (1) "seven . . . checks that have cleared his bank account for which he claimed [the] county has made no credit"; (2) "three . . . checks that have cleared his bank account for which he claimed

5

that [the] county credited the wrong amount"; (3) "two incidents of withholding from unemployment insurance benefits"; (4) "one federal tax offset"; and (5) "ten instances of income withholding for which he claimed that [the] county had credited the wrong amount." Kuller contends that the CSM made "insufficient findings to show that [he] considered most of the evidence [Kuller] submitted." Kuller argues that the "absence of findings suggests that the district court did not take all of the relevant factors into consideration."

We disagree. The CSM identified six child-support checks from Kuller that were received by the county but for which Kuller did not receive credit. These checks totaled $1,469 and were added toward the total support obligation paid by Kuller. Although the CSM's order initially states that he identified "seven" checks submitted by Kuller that "were received by the county" but "do not appear on the payment list submitted by the county," the word "seven" appears to be a typographical error because the CSM specifically found that these checks totaled $1,469, which is consistent with the list of six checks the CSM found to be submitted by Kuller. And to the extent that Kuller claims that he submitted a seventh check that should be added to in the $1,469 total, the CSM disagreed because he specifically found that Kuller "submitted other checks which *are reflected* in the [c]ounty's payment list." (Emphasis added.) Based on this finding, the CSM determined that with the exception of the six checks listed in finding 8.c.i., any additional checks submitted by Kuller were already credited by the county against Kuller's child-support overpayment and, therefore, did not need to be added to the county's list of payments received from Kuller.

6

Finally, the CSM found:

> [Kuller] believes that there are payroll deductions which are not credited by the county. It appears that the county recorded payments which correspond to the payroll deductions, except that the payment is $1 less than payroll deduction. [Kuller's] claim that there are additional payments in those situations is incorrect. The county is responsible for only the payment amounts actually received.

This finding indicates that the CSM considered the additional evidence submitted by Kuller and found that it should not be included in the amount Kuller paid toward his support obligation. In reaching this decision, the CSM noted that he "spent many hours analyzing this record to reach a conclusion." And in the order denying Kuller's motion for review of that order, the CSM stated that he "spent approximately 8 hours reading the entire court record, making notes, drawing charts, and drafting the findings." Although Kuller disagrees with the findings, the CSM's order reflects that he carefully considered the evidence presented, and Kuller is unable to demonstrate that the findings are clearly erroneous.

## III.    Application of the voided checks

The CSM found that the county issued a number of checks to Kuller to compensate him for his child-support overpayments. The CSM also found that some of these checks were not cashed by Kuller. Because Kuller claimed that he had not received the uncashed checks, the CSM ordered that the county "shall void any and all outstanding refund checks which have been issued to [Kuller]."

Kuller argues that the CSM's "error is not voiding the missing refund checks. Instead, it is in failing to include the amount of the voided refund checks in the total of

7

what he is owed by the County." Kuller's argument demonstrates his misunderstanding of the CSM's order because the voiding of the checks accomplishes that which Kuller desires, to ensure that he receives that which the county owes him. If the county did not void the checks, they would be deemed part of the county's reimbursement for Kuller's overpayment of child support and would be added to the total reimbursements to Kuller by the county of $8,529.28. If the voided checks were added to this total, the county would have over-reimbursed Kuller. But since Kuller never cashed the checks he allegedly never received, the CSM ensured that Kuller would not be penalized by including them in the total amount owed to Kuller by the county. And by ordering the county to void the checks, the CSM ensured that Kuller would not be reimbursed twice. Therefore, the CSM did not err by ordering the county to void any uncashed checks previously issued by the county.

## IV. Unreimbursed medical expenses of $371.44

Finally, Kuller challenges the district court's finding that in October 2013, he was obligated to pay $371.44 in unreimbursed medical expenses. To support his claim, Kuller asserts that the $371.44 "dollar amount does not appear in any order from October 2013." Instead, Kuller claims that the $371.44 dollar amount is derived from an order dated January 20, 2014, in which the CSM actually found that amount to be owed *to* Kuller, rather than an amount owed *by* Kuller. Kuller argues that because the $371.44 amount is actually owed to him, rather than an unreimbursed medical expense, the district court's finding is clearly erroneous.

We agree that the district court's finding that Kuller had unreimbursed medical expenses of $371.44 from October 2013 is clearly erroneous. The CSM found that in October 2013, Kuller had unreimbursed medical expenses of $371.44, and included this amount in Kuller's "total basic and medical support obligations from September 1, 2005 through December 31, 2014." But the order dated October 17, 2013, does not mention an amount of $371.44. Instead, the order simply dismisses Kuller's request for permission to bring a motion to reconsider a July 2013 order granting his motion to modify his child-support obligation. And there is nothing in the record indicating that Kuller had unreimbursed medical expenses of $371.44 at any time.

However, our review of the record also indicates that the unreimbursed medical expenses from October 2013 should actually be substantially more than $371.44. The record reflects that on July 13, 2013, the CSM ordered Kuller responsible for "50% of the uninsured/unreimbursed expenses arising from [the parties' daughter's] orthodontia treatment." The county subsequently notified Kuller in October 2013, that his 50% share of the unreimbursed medical expenses for his child's orthodontia treatment was $2,064.46. Thus, the $2,064.46 dollar amount, rather than the $371.44 dollar amount, actually represents Kuller's unreimbursed medical expenses from 2013. In determining the amount Kuller is due for his overpayment of child support, the CSM first calculated Kuller's total support obligation, which included his medical-support obligation. Because the CSM included all of Kuller's medical-support obligations in calculating Kuller's total support obligation, Kuller's unreimbursed medical expenses of $2,064.46 should be included in this amount. Accordingly, we reverse and remand for a

9

recalculation of the amount, if any, that Kuller is owed for his overpayment of child support.

**Affirmed in part, reversed in part, and remanded.**